## ROBERTSON v. HUNTER.

1. H being indebted to M individually, and also to a partnership of which M was a member, received from M a paper acknowledging the receipt of certain securities "in full discharge and settlement of all obligations of a pecuniary character." *Held*, that the terms of this paper did not include H's indebtedness to the partnership.

2. If M had been bound for the payment of H's debt to the partnership, there would have been no legal obligation of H to M individually therefor, until M had made the payment.

3. But M's verbal promise to see that H's debt to the partnership was paid was void under the statute of frauds, and therefore imposed no legal liability on M.

4. Where the testimony is not disputed, the Circuit Judge may properly instruct the jury as to the character of a promise to pay the debt of another—whether the undertaking is original or only collateral.

5. Where credit was refused to H unless M would promise to see the debt paid, and M so promised, but by agreement the account was charged to H, M's promise to pay is within the statute of frauds and not binding.

6. Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another. The test is whether there is a new consideration moving to the promisor; if not, the promise is not binding.

Before NORTON, J., Laurens, September, 1887.

This was an action by Toliver Robertson, surviving partner in the firm of Mills & Co., against J. P. Hunter, commenced July 30, 1886. The opinion states the case.

*Messrs. Holmes & Simpson*, for appellant.

*Mr. W. H. Martin*, contra.

June 19, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER. It seems that the plaintiff and one William Mills, now deceased, were copartners in trade under the name and style of Mills & Co., and the action is brought by the plaintiff as survivor of that firm to recover the amount of an account for merchandise sold and delivered by Mills & Co. to the defendant between the 8th of January, 1876, and the 10th of December, 1882. The defendant by his answer sets up two special defences, in addition to a general denial: 1st. "That he has been released and discharged from all liability thereupon by a written release under the hand of William Mills, deceased, executed on the 26th day of January, 1884, of which the following is a copy: 'The State of South Carolina. County of Laurens. This witnesseth that J. P. Hunter, on the 25th January, 1884, delivered to me, the undersigned, William Mills, his five several sealed notes, aggregating the sum of two thousand dollars, with a mortgage to secure the same, in full discharge and settlement of all obligations of a pecuniary character. Witness my hand and seal this the 26th January, 1884. (Signed) William Mills.'" 2nd. The statute of limitations as to so much of the account as was contracted prior to July 30, 1880.

It appears from the testimony that at the time the account was contracted Hunter was insolvent, and the plaintiff having some hesitation about crediting him, was told by Mills, his copartner, who was the uncle of Hunter, "You let him have the goods, and I will see it paid," but at the same time said, "You charge the goods to Dr. Hunter." Accordingly the defendant was allowed to run up the account sued upon, and the goods were charged on the books to Hunter. It also appeared from the testimony that at the time the paper above copied was signed by William Mills,

the defendant was indebted to him in a large amount, probably some ten or fifteen thousand dollars, a portion of which, but how much does not appear, seems to have been barred by the statute of limitations, and that Mills had no security for any part of this large indebtedness.

The Circuit Judge charged the jury that it was for him to construe the written paper set up in the answer as a release, and he instructed them that such paper could only be "a discharge and settlement of all obligations between the contracting parties, that is, between Dr. Hunter and Mr. Mills," and that the paper, as a release, is fatally defective in not being under seal, and hence that paper should have no effect in framing the verdict. He therefore instructed the jury to find for the plaintiff the amount of the account which accrued after July 30, 1880, after deducting the credits thereon. The counsel for defendant requested the judge to charge the jury that the fact of the account being charged upon the books to Hunter is only *prima facie* evidence ; that they may take into consideration other evidence as to whether or not the debt really was a debt which Mills assumed that Hunter owed him. To this request the judge responded that there was no evidence under which, under the statute of frauds, the estate of William Mills could have been made liable for the account; and he therefore instructed the jury to find for the plaintiff the amount of the account which was admitted, after deducting the credits and so much as was barred by the statute of limitations.

The jury having found a verdict in accordance with these instructions, defendant appeals upon the following grounds : 1. Because his honor erred in charging the jury that the paper put in evidence, executed by William Mills as an acknowledgment of settlement and compromise, was a release, and void for want of a seal. 2. His honor erred in charging the jury that the goods being charged to the defendant, J. P. Hunter, the testimony offered was incompetent, under the statute of frauds, to show that Mills, the deceased partner, authorized the sale to Hunter, and that Mills was the party to whom credit was given, and was responsible for the goods sold. 3. His honor erred in charging the jury that there was no proof to sustain the defence

that William Mills was responsible to the firm for the goods charged to Hunter. 4. That there was no evidence to sustain the defence, or authorize a verdict for defendant, and that if they regarded the instructions of the court, to find a verdict for the plaintiff.

The real question, as it seems to us, is whether the Circuit Judge erred in instructing the jury that the paper set up in the answer of the defendant, and there designated as a release, constituted no defence to this action. It being conceded that the defendant had purchased the goods, as stated in the account sued upon, from the mercantile firm of which the plaintiff was the survivor, and the plea of the statute of limitations, so far as applicable, having been allowed, the only remaining inquiry was, whether the account had been paid in the ordinary form, of which there was no pretence, or whether the liability of the defendant had been discharged by the paper set up in the answer. This paper not being under seal, it is conceded cannot operate as a release, but counsel for appellant contends that it may serve as a written admission of a compromise of all the indebtedness existing between the parties to it, which its terms cover. Conceding, for the purposes of this case only, that the paper may be so regarded, the question still remains, whether the account sued upon in this case can be embraced within the terms of the paper. When it is remembered that William Mills, as an individual, and the firm of Mills & Co., are in law two different and distinct persons, and therefore a release or compromise of all indebtedness to William Mills would not operate as a discharge of a debt due to Mills & Co., it would seem quite certain that the terms of this paper cannot be construed to operate as a discharge of a debt due by Hunter to Mills & Co.

It is true, as the Circuit Judge said in his charge to the jury, that William Mills, as a member of the firm of Mills & Co., had power, if he had undertaken to do so, to discharge or make a fair compromise of a debt due to his firm, but this he has not undertaken to do. By the express terms of the paper he only undertakes to discharge Hunter from pecuniary obligations to himself, and there is not a word in it indicating an intention to discharge any indebtedness to Mills & Co., nor is there any evidence (if, indeed,

such evidence would be competent) tending to show any such intention. Counsel for appellant, apparently appreciating this difficulty, contend that by virtue of the assumption of William Mills of the debt due by Hunter to Mills & Co., Hunter became indebted to Mills individually, and that such indebtedness was thereby embraced in the terms of the paper. There are, however, two objections to this position. In the first place, there is no evidence whatever that Mills, at the time the paper was executed, or, indeed, since, had paid the account to Mills & Co., and until that was done Mills would have no legal claim against Hunter; and in the second place, we agree with the Circuit Judge that the verbal promise made by Mills that he would see Hunter's account paid, was void under the statute of frauds, and therefore imposed no legal liability upon Mills for the payment of the account. So that in no view of the transaction can the verbal agreement by Mills to see Hunter's debt paid give rise to any indebtedness from Hunter to Mills individually.

Counsel for appellant contends that the Circuit Judge erred in refusing to submit to the jury the question whether the testimony showed an original or collateral undertaking upon the part of Mills to pay the account; but, as is said by O'Neall, J., in *Kinloch* v. *Brown* (1 Rich., 223), "Whether the facts proved made a case within the statute of frauds and perjuries was a legal question. All the facts proved were to be taken as true, and if upon them the judge below thought (as he did) that the promise was collateral, then he had the right to order a non-suit," which was accordingly sustained. In this case, which is much stronger than the one just cited, there was no conflict in the testimony. and we agree with the Circuit Judge that the undertaking of Mills was clearly void under the statute of frauds. The fact that the undertaking of Mills to see the account paid was one of the inducements, or, indeed, the sole inducement, to extend credit to Hunter, cannot affect the question. The test is, whether Mills's agreement was original or collateral, and that it was collateral is clear from the fact that the account was charged to Hunter and he made payments thereon. If Hunter contracted any liability at all, as he most certainly did, then it follows necessarily that Mills's liability was collateral merely, and hence within the stat-

ute of frauds.   These views are fully supported by the following cases: *Leland* v. *Creyon*, 1 McCord, 100; *Richardson* v. *Richardson*, 1 McMull., 280; *Kinloch* v. *Brown*, *supra;* and *Williams* v. *Caldwell*, 4 S. C., 100.

It is also contended that where a person promises verbally to pay for goods sold and delivered to another, the statute of frauds will not apply if it appears that the promisor has some interest in or expects to derive a benefit from such sale or delivery ; and that as Mills was a member of the firm, he expected to derive a benefit from the sale of goods to Hunter, which he had induced his partner to make by promising to see that the account would be paid.   It might be sufficient to say that, so far as we can see, no such position was taken in the court below, and the Circuit Judge neither made, nor was he requested to make, any ruling upon it, nor does the point appear to be raised by any of the exceptions.   We may add, however, that it is somewhat difficult to understand what benefit Mills could have expected to derive from extending credit to a notorious bankrupt, the result of which would probably be that he would not only lose his share of the goods so sold, but would also become liable to make good to his partner his share.   But more than this, the testimony shows that Mills's purpose was not to benefit himself, but his needy nephew, who was in distressed circumstances.

To avoid misapprehension, however, we do not wish to be understood as giving even an implied assent to the rule as stated for appellant.   On the contrary, we think the rule is more correctly stated in 3 *Parsons on Contracts*, 24, in these words : "Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another," and the illustration usually given is where a creditor has a lien on certain property of his debtor to the amount of his debt, and a third person, who also has an interest in the same property, promises the creditor to pay the debt in consideration of the creditor's relinquishing his lien. So that the test is, whether there is a new consideration moving to the promisor.   This is shown by the case of *Hindman* v. *Lanford*, 3 Strob., 207, cited by the appellant, where the pro-

mise to pay the debt of another was supported because it rested upon a new consideration moving to the promisor, to wit: the surrender to him of a bale of cotton which had been placed in the hands of the creditor to meet the original debt. In the present case, however, there was not the slightest evidence of any new consideration moving to Mills, and hence the rule invoked does not apply.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.