J. M. HARVEY, *Plaintiff in Error*, v. BANK OF CENTER HILL, *Defendant in Error*.

Opinion Filed January 23, 1922.

1. Where there is an independent and unconditional promise by one person to pay the debt of another, and such promise is made for a valuable consideration which is subsequently paid or executed by the promissee and is of direct pecuniary value to the promisor, the transaction is not within the statute of frauds, and the liability of the promisor is fixed by the falure of the principal debtor to pay the debt at maturity.

2. The defense that an alleged promise is within the statute of frauds is admissible under the general issue in an action upon the promise.

3. In an action upon the independent and unconditional promise of one person to pay the debt of another, a plea averring that when the action was brought the principal debtor was in the military service of the United States is without merit.

4. There is no reversible error in sustaining a demurrer to pleas which aver a state of facts admissible under the general issue.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Affirmed.

*Shackleford & Parks,* for Plaintiff in Error.

*D. C. McMullen* and *A. B. McMullen,* for Defendant in Error.

ELLIS, J.—The plaintiff in error in 1916 was the President of the Bank of Commerce at Tampa; also President of the Bank of Center Hill, which bank he visited six or seven times each year, and from the cashier of which, J. M. McMullen, received daily reports. In April, 1916, at a meeting of the directors of Center Hill Bank, J. M. Harvey was authorized to loan twenty to twenty-five thousand dollars "on outside paper." In May, 1916, the cashier of Center Hill Bank received from Mr. Harvey a note for two thousand dollars signed by Frank L. Cooper, F. M. Williams and three others, payable ninety days after date; the instructions were to discount the note and place the proceeds of it to the credit of the Bank of Commerce,

which was done. The transaction is referred to in the evidence for the purposes of this case as the Tampa loans. It is the transaction out of which this litigation grows. The note was extended from time to time on the payment of interest. On the first or second renewal five hundred dollars were paid on the note, reducing the indebtedness to fifteen hundred dollars. Then in January, 1917, the stockholders of the Center Hill Bank held their annual meeting. J. M. Harvey was re-elected President, and J. S. McMullen, Cashier. At that meeting Mr. Harvey held fifty-four shares of the stock, the total number of shares represented was one hundred and sixteen. He was present at the meeting.

Some of the stockholders offered to negotiate with him for the purchase of the stock owned by him and his associated interests. The Tampa loans had been "discussed very freely" between them previous to that time. D. C. Smith who was not a stockholder, but whose wife was, and whose interests he was looking after; Mr. J. C. McMullen, who was cashier and a stockholder, and Mr. J. M. Harvey held a private conversation "in regard to the Tampa loans." At this point it is better to quote the testimony of Mr. McMullen as the same appears in the bill of exceptions: "We brought out the subject that we were not satisfied to take over his (Harvey's) stock and release him from responsibility because we thought that with his connection he was responsible to the bank for these loans. I do not recall the exact words of the conversation, but the meaning was:" "By Mr. Shackleford: Now we object to the witness giving his conclusion." "By the Court: Tell what you finally did and answer as near as you can what words were used to come to that conclusion." "A. We requested Mr. Harvey that in consideration of the fact that

we were taking the bank over and he was practically being released or practically going out and giving up his interest that he would guarantee to us to pay the notes held by us the loans that were made by him for us in Tampa, that he would guarantee these Williams and others notes, and other notes that were held in the bank. That was an agreement which was really a matter upon which the trade hinged; that we would not care to take over Mr. Harvey's stock unless he would guarantee the payment of these notes." "By Mr. Shackleford: Now, I will ask the court to instruct the witness to confine himself in all respects to what was said there." "By the Court: As near as you can, Mr. McMullen, what you said to Mr. Harvey and what he said about the stock and the price of the stock and the consideration in connection with it, as near as you can tell." "A. In that private conversation the request was made by Mr. Smith and myself, both of us, that in taking up this stock the question was asked by us if he would guarantee the payment of the notes, and he said he would." "By Mr. Shackleford: "If the court please, the defendant moves the court to strike so much of the answer of the witness as relates to the guarantee testified to have been made by Mr. Harvey, upon the same grounds as the objection that was made to the introduction of such evidence." It should be stated here that Mr. Shackleford had objected to the introduction of any testimony "as to any promise, or special promise, to answer for the debt of Major Williams or any other person to the Bank of Center Hill by the defendant, because such an agreement or promise is not in writing signed by the defendant or any other person by him thereunto lawfully authorized, nor is any memorandum of such agreement or promise in writing so signed, and because it is incompetent and immaterial." The court had replied that it would

permit the "testimony to go on and see what it leads to. It may be the court will strike it later. The objection is overruled." In reply to the motion to strike quoted above, the court said: "If it can be shown that there was a consideration for that promise then it would be an agreement, an independent agreement. The court will not strike the testimony, but will instruct the jury that from the evidence it is entirely with them to say whether it was a promise." To this ruling the defendant excepted and the testimony proceeded as follows:

"Now just proceed and tell what was done under this agreement." To this the defendant objected, which objection the court overruled and defendant excepted. "What was done in furtherance of the agreement in relation to this stock and notes?" "A. Well, we proceeded with our transaction. I went to Jacksonville a few days later and arranged to get the money to take over Mr. Harvey's interest, and as soon as the money was secured I came to Tampa and bought Mr. Harvey's stock, with the exception of ten shares, I think, and gave him a check for the full amount of his stock and the Peninsular Trust Company of which he was an officer. The stock was delivered to me and re-issued later to Mrs. Smith and others."

In this transaction Mr. McMullen acted for the Bank of Center Hill, and in purchasing the stock for D. C. Smith and Mr. John Smith, and bought none of the stock for himself. The number of shares purchased from Harvey was fifty-four. Following this transaction Mr. Harvey on March 7, 1917, wrote from Tampa the following letter to Mr. J. S. McMullen, Cashier, Center Hill, upon letter paper of the Bank of Commerce:

"Tampa, Fla., March 7, 1917.

"Mr. J. S. McMullen, Cashier,

        "Center Hill.

"Dear Sir:

        "Enclosed herewith I hand you the following notes in settlement of the notes as per your letter of the 2d:

"F. M. Williams, et al. $1,500, and interest $20.

"T. M. Jones, $1,100 and check $172, in payment of interest due March 8th.

"Mr. Williams assures me that at least half if not all of the $1,500, will be paid at the next maturity; and you will notice that $150 has been paid on the Jones notes.

"All of these will be taken up whenever you may require, but as you have ample cash reserve at present, with prospects of a considerable increase in the next 3 or 4 weeks, I see no reason why this money should not be employed. As I have told you before, whenever you find it necessary to reduce your loans, any loans transferred to you from Tampa will be taken care of.

"I hope the frost of Monday night did no damage to the bean crop.

"With best wishes,

            "Yours truly,

                "J. M. HARVEY, President."

Objection to the reading this letter in evidence was overruled. Mr. Harvey remained President of the Center Hill Bank until July 31st, 1917, without compensation, when Mr. McMullen became President. The remaining ten shares of stock held by Mr. Harvey were transferred by him to I. R. LeGette who was a director of the bank. Mr. Harvey received book value for his stock.

The note was renewed several times afterwards at Mr. Harvey's request. It was not paid, Mr. Harvey denied his liability, and the Bank of Center Hill brought an action against him upon his guaranty. There was a verdict and judgment for the plaintiff, and defendant took writ of error.

The first count of the declaration declares upon an agreement to pay the Tampa loan. The second count declares upon a guaranty of the defendant that the debt would be paid, made by letter in March, 1917, the consideration being a further extension of time for the payment of the note, and the third count declares upon the defendant's agreement evidenced by the letter of March, 1917, to pay the debt.

A demurrer to the declaration was overruled. Seven pleas were filed to each the first and second counts, and eight pleas to the third. Demurrers to these were sustained, except as to the second plea to each count, each was merely a denial *seriatim* of the allegations of the three counts of the declaration.

The order sustaining the demurrer to the pleas constitutes the basis of fifteen of the seventeen assignments of error.

A plea called a fourth plea was filed, upon which issue was joined. That plea denied the agreement alleged in the declaration, and denied that the plaintiff caused the stock to be purchased as alleged, and avers that therefore there was no lawful consideration for the alleged agreement or promise by the defendant. The plea was duplicitous because it first denied the agreement, and then admitted it, but averred it to be without consideration. The general issue was pleaded to each count of the declaration.

The pleas to which demurrers were sustained presented the following issues:  The agreement was not in writing, nor was any memorandum made thereof signed by the defendant or any one for him; the letter constituted no such memorandum;  no  consideration  for  the  promise; defendant was an officer of the plaintiff bank at the time of the Tampa loans and acted for it; that two of the persons who signed the note were in the military service when the action was begun, and the bank brought an action in Hillsborough county against all the makers of the note, but failed to get service upon the two who were in the military service,  judgment was obtained against two of the signers, and that the plaintiff had not therefore pursued its remedy against all the signers of the note; that prior to this action the plaintiff had brought an action against all the makers of the note and the action was then pending in Hillsborough county.

There was no error in the court's order sustaining the demurrer to these pleas because the action was upon an independent promise made by defendant for a valuable consideration which was executed by the plaintiff, an unconditional guaranty of the payment of the Tampa loan, supported by a valuable consideration.   The liability of the guarantor was fixed by the failure of the makers of the note to pay at maturity.   See 12 R. C. L. 1064; Pierce v. Nerrill, 128 Cal. 464, 61 Pac. Rep. 64; Jenkins v. Wilkinson, 107 N. C. 707, 12 S. E. Rep. 630.   That the alleged promise was within the statute of frauds was a matter admissible under the general issue.   See Archbold's Nisi Prius, 175.   No consideration for the promise was covered by the new fourth plea, so the error in overruling the pleas setting up no consideration was cured by the new fourth plea and the plea averring that the defendant was an

officer of the bank and acted for it in making the loans, constituted no defense, but if the fact was in any wise material it was admissible under the general issue and did in fact appear in the evidence. The plea averring that two makers of the note were in the military service when the action against the defendant was begun, had no merit because the defendant's guaranty was unconditional according to the allegations of the declaration.

We think that each count of the declaration stated a cause of action, therefore the demurrer to it was properly overruled. Whether the transaction as testified to by Mr. McMullen was within the statute of frauds, or being within it the statute was complied with, is the question presented by this record. All other questions arising upon the pleadings and upon the introduction and rejection of evidence lead to that problem. If the transaction was not within the statute of frauds or was rescued from it by defendant's letter of March, 1917, the evidence was quite sufficient to support the verdict. If, however, the agreement entered into between the defendant and the Bank of Center Hill through Mr. McMullen and Mr. Smith was within the statute of frauds and the letter not a sufficient memorandum of the agreement to satisfy the statute, the judgment of course should be reversed. The evidence is quite sufficient to support the conclusion of fact that the bank entrusted to Mr. Harvey alone the matter of making the Tampa loans, that the Bank of Commerce in Tampa of which he was president received the benefit of the loans so far as the plaintiff bank was concerned; that at the stockholders meeting in January, 1917, while Mr. D. C. Smith owned no stock in the plaintiff bank, his wife did, and that he acted in her behalf and for her interest as a stockholder, and that in co-operation with Mr. J. S. Mc-

Mullen, Cashier, acted for the bank in the transaction with the defendant. That the defendant received book value for his stock which was paid for through Mr. McMullen acting for the stockholders to whom it was ultimately transferred, and that the consideration for the price paid was the defendant's promise made for the benefit of the bank to guraantee the Tampa loans, and that the defendant's letter of March 7, 1917, to Mr. McMullen, Cashier of the plaintiff bank, viewed in the light of the verbal promise constituted a written acknowledgment of the promise to take up the Tampa loans whenever the Center Hill Bank might require him to redeem his verbal promise. The letter definitely referred to the oral promise, there was no other promise to which the words could have referred. The language was as follows: "As I have told you before, whenever you find it necessary to reduce your loans, any loans transferred to you from Tampa will be taken care of." In the light of the verbal agreement the language could not be interpreted as a mere platitudinous expression of opinion that when the Center Hill Bank wanted its money returned that the makers of the note would pay it.

We are of the opinion that the verbal promise as testified to by Mr. McMullen and Mr. D. C. Smith was not within the statute of frauds. Punta Gorda Bank v. State Bank of Ft. Meade, 52 Fla. 399, 42 South. Rep. 846; Craft v. Kendrick, 39 Fla. 90, 21 South. Rep. 803.

The consideration moving from the stockholders of the Center Hill Bank to the defendant operated to the advantage of the defendant and placed him under a pecuniary obligation to them. The defendant owned a large share of the stock of the Center Hill Bank, its book value depended largely upon whether the Tampa loans negotiated by the

defendant for the bank would be paid at maturity. The defendant desired to sell his stock in the bank, the stockholders were willing to purchase at that price only upon consideration that the defendant would guarantee the payment of the Tampa loans. He agreed to do so, thereby obtaining an advantage which he could not then have obtained but for the promise. He desired to promote his own interest, to obtain a good price for his stock in the bank the books of which showed it to be in good condition assuming that the Tampa loans were good and collectible at maturity. The consideration moving from the purchasers of the stock was no mere indirect or incidental benefit to the defendant. It was the thing desired by him, his release from the statutory liability to the extent of the par value of his shares in case the bank should fail, the sale of his stock for a price which could only be obtained if the loans were collectible, this was the inducement for his promise. The purchasers were agreeing to pay a price justified only by the guaranty that the Tampa loans would be paid. The defendant's promise was the inducement moving them to pay him book value for his stock. See 25 R. C. L. 494.

If the letter itself did not constitute a sufficient memorandum in writing to take a promise out of the statute which otherwise would be within it, and upon this point we express no opinion, the promise made orally by the defendant was an original unqualified guaranty of the payment of the Tampa loans, made for a valuable consideration independent of the debt and was enforceable in the action. The demurrer was to the declaration in its entirety and the first and third counts were good even if the second should be considered bad.

There is no error apparent in the record, so the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.