## 12357

### McCOY, GUARDIAN, v. HYDRICK

#### (141 S. E., 174)

1. FRAUDS, STATUTE OF—LAWYER'S ORAL AGREEMENT TO SECURE CLIENT AGAINST LOSS ON LOANS MADE THROUGH HIM HELD VOID UNDER STATUTE OF FRAUDS (CIV. CODE 1922, § 5516).—Where lawyer loaned money for plaintiff in transactions in which plaintiff in first instance gave credit to borrowers, accepting their written obligations, and looked to lawyer only as surety or guarantor, lawyer's oral agreement to make good promises of borrowers was void under Statute of Frauds (Civ. Code 1922, § 5516).

2. ATTORNEY AND CLIENT—ATTORNEY, SPECIALLY INSTRUCTED, IS LIABLE FOR LOSSES RESULTING FROM FAILURE TO FOLLOW CLIENT'S INSTRUCTIONS.—Attorney's duty when he is specially instructed is to follow instructions of client, except as to matters of detail connected with conduct of suit, and he is liable for all losses resulting from failure to follow such instructions with reasonable promptness and care.

3. APPEAL AND ERROR—PLAINTIFF NOT EXCEPTING TO RULING UNDER WHICH SHE ELECTED TO PROCEED AGAINST ATTORNEY ON CONTRACT CANNOT ON APPEAL RAISE QUESTION OF LIABILITY FOR DEFENDANT'S FAILURE TO FOLLOW INSTRUCTIONS.—In action by client against attorney to recover losses sustained by plaintiff in investments made for her by defendant, in which there was no exception to ruling requiring election whether plaintiff would proceed on cause of action *ex contractu* or *ex delicto*, plaintiff, having chosen former, cannot on appeal raise question of defendant's liability for failure to carry out instructions she had given him.

Before Mann, J., Orangeburg, June, 1926. Affirmed.

Action by Ellen B. McCoy, as guardian for Nellie Brady McCoy and others, infants, against Andrew J. Hydrick. Judgment for defendant, and plaintiff appeals.

*Mr. L. A. Hutson,* for appellant, cites: *Statute of frauds:* 20 Cyc., 162; 85 S. C., 107; 107 S. C., 318. *When question for jury:* 104 S. C., 218. *Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another:* 3 Parsons on Contracts, 24; 29 S. C., 14; 68 S. C., 392; 3 Strob., 177; 85 S. C., 107. *Performance of verbal contract, originally within the statute bars setting up of statute as a defense:* 26 S. C., 80; 2 Bail., 614; Rich. Eq. Cas., 17; 3 S. C., 298. *"Valuable consideration":* 124 S. C., 68. *Guaranty here:* 75 S. E., 1080; 20 N. C., 279; 11 S. E., 175; Toll on Guaranties, I; Smith on Merc. Law, 277. *Pecuniary interest of defendant in transaction sufficient consideration to support the guarantee:* 90 N. C., 487; 68 S. E., 134; 73 S. E., 234; Id., 240. *"Illegal contracts":* 9 A. & E. Enc. L., 880. *Contracts of indemnity or guaranty are not against public policy where the act contemplated is not illegal:* 6 Me., 361; 65 N. W., 351; 30 L. R. A., 586; 94 N. Y., 168; 39 N. Y. S., 930; 42 N. Y. S., 418; 53 N. E., 31; 174 U. S., 164. *"Competent evidence":* 22 C. J., 65. *"Attorney's duty":* 6 C. J., 704.

*Messrs. C. H. Whetstone, Lide & Felder* and *Brantley & Zeigler,* for respondent, cite: *Written instrument construed by Court:* 32 S. C., 273. *Statute of frauds:* Sec. 5510, Code. *That one has undertaken to answer for the default of another cannot be proven by parol:* 106 S. C., 37. *Where the facts are undisputed or susceptible of only one inference, it is a question of law whether the contract sued on is an original or a collateral undertaking within the statute of frauds:* 104 S. C., 218.

January 13, 1928.

The opinion of the Court was delivered by Mr. Justice Blease.

This is an appeal by the plaintiff from a directed verdict in favor of the defendant by his Honor, Judge M. M. Mann, in the Court of Common Pleas for Orangeburg County.

The plaintiff is the guardian of her three minor children, and sued as such. The defendant is a practicing attorney at law.

The complaint contained three causes of action, and each of these set forth general allegations to the following effect:

(1) That plaintiff, from time to time, placed large sums of money in the hands of the defendant, to be loaned by him on real estate security, "with the distinct understanding and agreement that he (the defendant Andrew J. Hydrick) would pass on the value of all security and make good in cash any loss, by reason of an investment or loan that he made, and would repay to the plaintiff in cash any loss sustained, if the security taken for any loan or investment made by him failed to bring enough to repay to the plaintiff, after foreclosure and sale, the full amount of such loan or investment, with interest, attorney's fees, and cost, and such agreement was duly entered into by the plaintiff and the defendant, Andrew J. Hydrick."

(2) That plaintiff instructed the defendant, in making the loans, not to "invest or loan any of her money on a second real estate mortgage, and not to invest in or take as security, any property on which existed a prior claim or lien, and the defendant, Andrew J. Hydrick, agreed that he would not take such questionable security for any of the loans that he made."

(3) That, in disregard of his agreement, the defendant negligently loaned certain sums of money on unauthorized security to the plaintiff's loss, and that he thereby became "indebted unto the plaintiff" in the sum mentioned.

In each cause of action the loan complained of is described, and the loss alleged to have been sustained thereby, and the manner of the loss is stated.

The defendant interposed a general denial, and alleged further that the agreement sued upon was within the statute of frauds (Section 5516, Vol. 3, Code, 1922), in that it was sought to charge the defendant upon a promise to pay the debts of other persons, and the agreement so to do rested only in parol.

On motion of defendant, the presiding Judge required the plaintiff to elect if she would proceed on a cause of action *ex contractu* or *ex delicto,* and the plaintiff chose the former; and it was announced by plaintiff's attorney that he contended, under the complaint, that the defendant was liable "as a borrower and guarantor." There is no exception as to this particular ruling of the trial Judge.

While plaintiff offered five witnesses, whatever case she had was made out by her own testimony, and we need only review what she testified. In some respects, her testimony went further than matters alleged in her complaint, and in some instances there are inconsistencies in her statements. Her testimony, pertinent to the inquiry here, was, in effect, as follows:

In June, 1917, defendant called to collect from plaintiff a premium due on her bond as administratrix of her husband's estate. Upon being informed by her that she had a great deal of money in banks at a low rate of interest, defendant requested that he be allowed to handle the money for plaintiff, and that he would guarantee absolutely every dollar put out by him. Plaintiff consulted her attorney, the late Honorable Thomas M. Raysor, as to permitting defendant to handle the money and was advised by Mr. Raysor to allow the defendant to do so, but not to permit the defendant to make loans outside of Orangeburg County, or to take second mortgages, and not to go over two-thirds value of real estate. The plaintiff, on August 15, 1917, advanced the defendant $850 to be loaned to one Westberry; and it appears that this loan was repaid in full. At the time,

plaintiff wrote in a ledger, which she kept, the following memorandum:

"Mr. A. J. Hydrick guarantees the absolute safety and security of all mortgages made by him and all money loaned to any parties by him."

*This memorandum was not signed by the defendant.*

Statements in the testimony of the plaintiff in her own language were as follows:

"It was understood that he was to loan this money to these people and take mortgages from the people to whom he loaned money; he was to take first mortgages and not to go full value on them.   Money was advanced as the loans were made."

"I told him not to take second mortgages, and not to go out of County and not to take over two-thirds value of property; I told Mr. Hydrick, that, before I advanced anything.   After writing was entered in book, I told him not to take second mortgages, not to go out of County and not to take over two-thirds value of property no matter where it was.   He took second mortgages as security on property. He took securities contrary to the instructions given him, property outside of County of Orangeburg."

"He usually sent the borrower out to see me.   I could have talked with the borrower about the security, but I trusted Mr. Hydrick."

"When Mr. Hydrick had these securities he kept them in his safe.   He kept them about five years in his safe.   The first time I saw them was when I went there and got them, some time before this suit, January, 1923.   *  *  *   Every time he made a loan he told me that the security was ample, and phoned me and told me about the loan, that it was ample security, and sent the check out for me to sign.   I do not know whether the checks were made to Mr. Hydrick or

the respective parties; he just sent me out a check and telephoned me and said the security was ample and for me to sign it, and I did sign it."

Plaintiff's testimony further showed that all notes, bonds, and mortgages, and asignments of such papers, were taken in her name. The loans she complained of losses about were loans made to D. H. Hydrick, a brother of the defendant, D. B. Bell, and W. F. Stroman. Against these parties foreclosure suits were had, the lands, in almost every instance, were bid in by the plaintiff, and deficiency judgments were entered up in her favor. Her total loss on loans to these three parties she alleged to be the sum of $13,732.40, for which she made demand on the defendant. The defendant was not made a party to any of these suits.

While it is not necessary, for the purpose of determining the appeal, to review the testimony on behalf of the defendant, it may be stated that his testimony was a denial of the agreement alleged by the plaintiff to have been made by him, and he also offered testimony to show that, at the time the loans complained of were made, the properties were considered to be worth more than the amounts loaned thereon, and that the loss to the plaintiff was due to the deflation in values of farming lands.

The master of the County, Hon. E. C. Mann, testified that there had been, during recent years, a large number of sales of farming lands, under foreclosure proceedings, for loans made through lawyers of the Orangeburg bar, where the lands, on account of the deflations existing, were bid in by the mortgagees for nominal sums.

The defendant objected to practically all of the testimony offered by the plaintiff, and the Circuit Judge sustained the objection as to the alleged agreement, on the ground that the same was not signed by the defendant. The directed verdict was granted for the same reason.

The seven exceptions question the correctness of the presiding Judge's ruling in refusing to admit the testimony and the granting of the motion for a directed verdict. All the exceptions may be disposed of together.

Mr. Justice Cothran, in the recent case of *Gaines v. Durham,* 124 S. C., 435; 117 S. E., 732, reviewed to some extent our cases which pass upon the provision contained in the Statute of Frauds, which is under consideration here. That case involved the sale of fertilizer by a merchant to a tenant upon the agreement of the landlord to be liable for the debt contracted, and it was held that the landlord was liable, as the agreement was an original undertaking on his part and was not a collateral agreement to answer for the debt of another within the Statute of Frauds. In the opinion, there was quoted with approval the following declaration from the case of *Lorick v. Caldwell,* 85 S. C., 94; 67 S. E., 143:

"Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the Statute, although it may be in form, a promise to pay the debt of another."

The appellant relies strongly upon the principle from the *Lorick case.* Appellant also depends upon the case of *Partin v. Prince,* 159 N. C., 553; 75 S. E., 1080, where the North Carolina Supreme Court made this holding:

"Where a person orally promised another that, if she would put money in his hands for investment, he would guarantee its safety, this was not a promise to answer for the debt of another within the Statute of Frauds; there being no other debt contracted or contract made except the contract of guaranty." Syllabus.

We do not think the case at bar comes within the principles announced in either the *Gaines, Lorick,* or *Partin cases.* It

does not appear from the testimony that "the main purpose and object of the promisor" was to "subserve some purpose of his own." The testimony here, from the viewpoint of the plaintiff, was that the defendant was "to answer for another."

In the *Partin case, supra,* the plaintiff placed her money with the defendant for investment, *giving the defendant absolute control over the same. There was no contract on the part of any third party to pay the plaintiff the debt.* The defendant, as it appears he had the right to do, under the contract with the plaintiff, invested the money in an enterprise in which he was interested. The plaintiff testified that the defendant guaranteed the investment, and told her "that she could look to him for the amount, and not to those other men."

In the case at bar, it seems to have been admitted by the plaintiff that the defendant was to accept, and did take, notes and bonds, secured by mortgages, from borrowers, whose papers were to be made payable to the plaintiff. The plaintiff accepted these papers, and when payment thereof was not made, she instituted suit against the makers of the papers. The defendant was not at any time regarded as a party to the transactions. He was only sued after the plaintiff failed to collect the amounts due her from the makers of the securities held by her. Perhaps, in fairness to the defendant, if the plaintiff regarded the latter as primarily liable for the obligations she had accepted, she should have made him a party defendant to her suits on the notes and mortgages, and, if the Court had held the defendant responsible therefor, then he might have protected his interest by bidding in the mortgaged lands. It must be clear, therefore, that the plaintiff at that time at most regarded the defendant only as a guarantor of the debts due her by those who had borrowed her money. Indeed, in the trial, when called upon to state his position, plaintiff's attorney definitely announced

that he claimed the defendant's liability was as "borrower and guarantor." These positions were, of course, contradictory—defendant could not be both the borrower and the guarantor. There was no proof whatever that he was "borrower" of the funds; he was, therefore, liable, under plaintiff's contention, only as *guarantor,* or not liable at all. The appellant's argument here that the defendant was liable as an original promisor is a change of position from that taken in the lower Court.

In our opinion, this case is very much in line with the principles announced in the case of *Robertson v. Hunter,* 29 S. C., 14; 6 S. E., 850. The plaintiff in that case sought to recover of the defendant, Mills, for goods sold to one Hunter, upon the agreement of Mills that he would stand for the amount of the account. In the opinion, Mr. Justice McIver, speaking for the Court, said this:

"The fact that the undertaking of Mills to see the account paid was one of the inducements, or, indeed, the sole inducement, to extend credit to Hunter, cannot affect the question. The test is whether Mills' agreement was original or collateral, and that it was collateral is clear from the fact that the account was charged to Hunter and he made payments thereon. If Hunter contracted any liability at all, as he most certainly did, then it follows necessarily that Mills' liability was collateral merely, and hence within the Statute of Frauds."

There is an interesting note on the subject under investigation in 15 L. R. A. (N. S.), 214. In the summary, these clear statements are made:

"An oral, contemporaneous, unconditional promise to perform the obligation of the contract, of which another is to receive the benefit by a person not a party thereto, but to whom credit is extended in the first instance by the promisee in reliance upon the promise, is sufficient evidence in

and of itself of an intent upon the part of the parties to the transaction that the promisor should thereby create an original, rather than a collateral, obligation.

"But, on the other hand, *if, in the first instance, credit is given to the debtor or purchaser, and the promisor is looked to only as a surety or guarantor, it will be presumed that it is the intention of the parties that the promisor shall by his promise create a collateral obligation, which will be void under the Statute of Frauds if not in writing and founded upon a valuable consideration.*" (Italics ours.)

It appears as an undisputed fact in the case at bar that the plaintiff, "in the first instance," gave credit to the persons to whom her money was loaned, and accepted for such loans the written obligations of the borrowers; that her contracts were with the makers of the notes, bonds, and mortgages, "and the promisor (the defendant) was looked to only as a surety or guarantor." Under these circumstances, the agreement of the defendant, if there was such, to make good the promises of the borrowers to pay their obligations, was void under the Statute of Frauds, if such agreement was not reduced to writing and signed by the defendant, or some one with authority to bind him. There was absolute failure to prove any such written agreement on the part of the defendant. It follows, therefore, that the Circuit Judge was correct in his holding that the plaintiff had failed to make out her case, and it was proper that the motion for a directed verdict in favor of the defendant be granted.

In the argument, the appellant takes the position that the trial Judge erred in not submitting to the jury the question of the defendant violating the instructions given by the plaintiff as to the securities he was to take for money loaned. In support of this position, counsel for the appellant cites the following from Corpus Juris:

"An attorney's duty, where he is specially instructed, is to follow the instructions of his client, except as to matters of detail connected with the conduct of the suit, and he is liable for all losses resulting from his failure to follow such instructions with reasonable promptness and care," etc.   6 C. J., 704.

We agree with the principle announced, but under the circumstances of this case, as shown by the record, we cannot, at this time, consider it in favor of the appellant.   In the trial below, the appellant saw fit to stand upon her alleged agreement that the respondent was to "make good" the losses on securities, which were accepted through him. She did not choose to stand upon the allegations of her complaint that the defendant had negligently failed to carry out the instructions she had given him.   As noted above, there was no appeal from this ruling of the Circuit Judge, and the question raised in the argument is therefore not properly before this Court.

It is the judgment of this Court that the judgment below be affirmed.

Mr. Chief Justice Watts and Mr. Justice Carter concur.

Mr. Justice Stabler did not participate.

Mr. Justice Cothran (dissenting) : I do not concur in the opinion of Mr. Justice Blease, and will respectfully state the grounds of my dissent.

The bald facts stand out in this case, that the plaintiff, a widow, as guardian of her three small children, who had inherited quite a sum of money from their father, committed to the defendant as an attorney, for investment, certain funds of the guardianship estate, and that the net result of the transactions negotiated for her by Mr. Hydrick is a loss of nearly $14,000, possibly reducible by the disposition

of certain mortgaged real estate which she was forced to take over upon foreclosure sales.

The embarrassing question presented by the litigation is whether the defendant shall be required to make good that loss, whatever it may be ascertained to be. The *immediate* question before the Court, upon this appeal, is whether his Honor, the presiding Judge, erroneously directed a verdict in favor of the defendant, upon the ground that the agreement relied upon by the plaintiff was to answer for the debt, default, or miscarriage of another, was within the Statute of Frauds, and that such agreement, not being in writing, could not be established by parol evidence.

The plaintiff in her complaint relied upon two distinct causes of action, which, however, were not separately stated, as the Code requires:

(1) An express agreement on the part of the defendant to indemnify the plaintiff from any loss which might be sustained by the failure to realize upon the securities taken for the contemplated loans and investments.

(2) Damage sustained by the plaintiff by reason of the negligence of the defendant in disobeying her instructions, after the said agreement, in reference to the character of the loans to be made.

It is stated in the remarks of the Circuit Judge, in directing a verdict:

"The counsel for the plaintiff, when required by the defendant's counsel to elect on which cause of action he would rely for relief, whether *ex contractu* or *ex delicto,* elected to rely upon the *ex contractu* cause of action as set out in the complaint."

Although this fact does not elsewhere appear in the transcript, as no objection to the statement has been made by the appellant, I will assume it to be a fact, not questioning, of course, the statement of his Honor.

The allegations of the complaint as to the cause of action upon which the plaintiff elected to proceed were as follows:

"That on or about the 15th day of June, 1917, the defendant, Andrew J. Hydrick, called at the residence of the plaintiff, in the City of Orangeburg, S. C., and while there told the plaintiff that he would be glad to invest and loan for her, as guardian for her children or otherwise, any amount of money that she had to loan or invest; that, after some time elapsed, the plaintiff agreed to let the defendant, Andrew J. Hydrick, handle, invest, and loan on real estate security a large amount of money that she had as guardian for her little children, Nellie Brady McCoy, Jessie Addison McCoy, and Addison E. McCoy, infants, left them by their father, A. C. McCoy, deceased, with the distinct understanding and agreements that he (defendant, Andrew J. Hydrick) would pass on the value of all security and make good in cash any loss, by reason of an investment or loan that he made, and would repay to the plaintiff in cash any loss sustained, if the security taken for any loan or investment made by him failed to bring enough to repay to the plaintiff, after foreclosure and sale, the full amount of such loan or investment, with interest, attorney's fees, and cost, and such agreement was duly entered into by the plaintiff and the defendant, Andrew J. Hydrick."

The plaintiff offered parol evidence to sustain this cause of action; it was excluded by the presiding Judge, upon the ground that the alleged agreement was within the Statute of Frauds, as an agreement to answer for the debt, default, or miscarriage of another. Section 5516, Vol. 3, Code 1922. A directed verdict for the defendant inevitably followed.

I think there are two very substantial grounds upon which the testimony offered by the plaintiff was admissible, to establish the agreement: (1) It tended to show an original

independent contract between the defendant and the plaintiff; (2) assuming that it was intended as a guaranty of the loans, the contract was based upon a distinct consideration of benefit to the defendant and of harm or risk to the plaintiff—in neither of which conditions does the Statute of Frauds have any application.

I. The defendant is and was an attorney of the very highest character. Nothing that I may say is intended or may be construed as a reflection upon him, whom I have known for many years. It is unfortunate for me that my views may appear hostile to his interests.

It is not entirely clear, even from Mr. Hydrick's testimony, which of the parties approached the other in reference to the investment. He says:

"I don't recall whether I offered my services or not, but I know the question of getting her money out came up, *and I presume that I offered to assist her.*"

That, however, is not material; if an agreement was entered into between them that he should supervise the investment upon certain terms, it matters not whether he first approached her or she him.

Whether she has correctly stated the terms of the agreement or not, it is clear that a contractual relation of some kind was established. It was at least a contract in the line of the defendant's business; he was a lawyer, and one of the sources of income of that profession, with some exceptions, is the examination of titles for loans and the preparation of papers, for which the borrower usually pays. The testimony shows that this line of employment was followed by the defendant in several instances connected with the plaintiff's loans. It seems to me not at all an unreasonable stipulation, as an inducement to get the business and the opportunity to make fees out of it, that the defendant would indemnify the plaintiff from loss. I do not consider

*that* a promise to answer for the debt, default or mis-carriage of another, but one which entered directly into the contract *made by the defendant with the plaintiff.*

II. But, considered as an express guaranty of the loans, the same elements of personal benefit to the defendant and risk to the plaintiff entered into the contract and removed it from the operation of the statute. The case of *Gaines v. Durham,* 124 S. C., 435; 117 S. E., 732, with the many citations therein, seems to me conclusive of the issue. The following additional authorities sustain the position:

In *Hindman v. Langford,* 3 Strob. 207, the Court said:

"Langford's agreement was a promise to answer for the debt of a third person, who was still held liable; but it was founded on a new and distinct consideration, coextensive with it, and moving not to the third person, but to the person who made the promise."

In *Robertson v. Hunter,* 29 S. C., 9, 6 S. E., 850, the Court said:

"So that the test is whether there is a new consideration moving to the promisor. This is shown by the case of *Hindman v. Langford,* 3 Strob., 207, cited by the appellant, where the promise to pay the debt of another was supported because it rested upon a new consideration moving to the promisor."

*Robertson v. Hunter* is cited with approval and largely quoted from, in *Turner v. Lyles,* 68 S. C., 392; 48 S. E., 301.

In *Ellis v. Carroll,* 68 S. C., 376; 47 S. E., 679; 102 Am. St. Rep., 679, it is held (syllabus):

"A promise to pay the debt of another upon forbearance to enforce immediately some subsisting lien, is not within the statute of frauds, when the release is a damage to the creditor, or a benefit to the party promised for."

In the case of *American Co. v. Mauldin,* 128 S. C., 241;
122 S. E., 576, the Court, reaffirming Gaines v. Durham,
124 S. C., 435; 117 S. E., 732, says:

" * * * This Court has always recognized and ap-
proved, and with more or less consistency adhered to, the
broad rule laid down by Chancellor Kent in an early leading
case (*Leonard v. Vredenburgh,* 8 Johns. [N. Y.] 29; 5
Am. Dec., 317), that, where a promise to pay an existing
debt of another is made on a new and original consideration
of benefit or harm moving between the newly contracting
parties, it is not within the Statute but is regarded as an
original promise."

"An oral 'promise to pay' an existing debt of a third
person, founded on a new consideration, is not within the
Statute of Frauds, being an original and not a collateral
promise." Syllabus, *Zimmerman v. Holt,* 102 Ark., 407;
144 S. W., 222.

"Where the promise to pay the debt of another is not the
chief purpose of the transaction in which it inheres, and a
substantial and valuable consideration therefor inures di-
rectly to the benefit of the promisor, * * * the promise does
not fall within the Statute, and no writing is necessary to sup-
port it. In cases of this character, the fact that the object of
the promisors is not to answer for the debts, defaults, or mis-
carriages of others, but is to obtain substantial benefits or
advantages to themselves, which they actually secure as the
consideration for their agreements, distinguishes these prom-
ises from those within the Statute, and makes them original
agreements of the promisors, which are valid without ·
writings." *Mine Co. v. Bank* (C. C. A.), 173 F., 859.

In *Whitehurst v. Padgett,* 157 N. C., 424; 73 S. E., 240,
it is held that a promise for the benefit of the promisor,
where he has a personal and pecuniary interest in the transac-
tion in which a third party is the original obligor, is an

"original promise" which is not within 'the Statute of Frauds.

"An original promise to answer for the debt of another, based on a consideration, is valid, though not in writing. Syllabus, *Peele v. Powell,* 156 N. C., 553; 73 S. E., 234.

In *Whitehurst v. Hyman,* 90 N. C., 489, it is held that a promise based upon a valuable consideration, a benefit or harm passing between the promisor and the creditor is not within the Statute.

In *Hawes v. Murphy,* 191 Mass., 469; 78 N. E., 109, it is held that a verbal promise by defendant to save the plaintiff harmless from all loss on account of a bond signed by plaintiff as surety at the defendant's request, who had an indirect interest in the transaction, was not within the Statute.

"Wherever the leading purpose of a person who agrees to pay the debt of another is to gain some advantage or promote some interest or purpose of his own, and not to become a mere guarantor or surety for another's debt and the promise is made upon a sufficient consideration, it will be valid, although not in writing, and the contract is not within the statute of frauds." Since in such case it will be deemed an original promise. *Trulock v. Blair,* 8 Okl., 345; 58 P., 1097.

"Promise to answer for debt of another if founded on new and sufficient consideration, need not be in writing and subscribed by promisor." *Day v. Morgan,* 184 Wis., 595; 200 N. W., 382.

"A parol promise to pay the debt of another is not within the Statute when it arises from some new and original consideration of benefit or harm moving between the new parties." *Burkhart v. Berry,* 162 Ark., 123; 257 S. W., 723; *Harvey v. Bank,* 83 Fla., 55; 90 So., 699.

"Where one on the strength of a defective agreement in good faith parts with a valuable consideration which en-

riches the promisor, a Court of equity will enforce the agreement, though it requires the lifting of it out of the Statute, and this principle applies to a guaranty of a note where the guarantor received and retained a valuable consideration." *Peavey v. Loveland,* 174 Wis., 57; 182 N. W., 349.

"In determining whether an agreement is within the Statute of frauds as a promise to 'answer for the debt of another,' the distinction is between a promise the object of which is to promote another's interest and one in which the object is to promote the interest of the party making the promise; the former being within the Statute of Frauds, the latter not." *Machinist v. Green,* 79 N. H., 366; 109 A., 45.

"An oral" agreement "to pay the debt of another * * * to derive some benefit to" promisor "thereby, which he would not otherwise have had, * * * is an original undertaking and not within the Statute of Frauds." *Custard v. McNary,* 85 W. Va., 516; 102 S. E., 216.

"A promise to pay the debt of another, where founded upon a new, different, and sufficient consideration, is not within the Statute of Frauds. * * * *Bryant v. Jones,* 183 Ky., 298; 209 S. W., 30.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the case remanded to that Court for a new trial.