102 So.2d 288 (1958)
BRUCE CONSTRUCTION CORP., a corporation, Miami Station, Inc., a corporation, and Jack S. Mintzer, Appellants,
v.
THE STATE EXCHANGE BANK, Lake City, Florida, a banking corporation, appellee.
Supreme Court of Florida.
April 23, 1958.
*289 Fleming, Scott & Botts, Jacksonville, for appellants.
Brannon, Brown, Smith & Norris, Lake City, for appellee.
O'CONNELL, Justice.
Appellee, The State Exchange Bank, as plaintiff sued the defendants, Bruce Construction Corp., Miami Station, Inc., I.L. Mintzer and Jack S. Mintzer, claiming that defendants had promised plaintiff that if plaintiff would treat as cash checks of Flamingo Electric Contracting Co., drawn on a Miami or Miami Beach bank, the defendants "would pay or would see that said checks * * * would be paid when they reached the bank in Miami or Miami Beach, Fla., upon which they were drawn by Flamingo, and that the plaintiff would lose nothing as a result of cashing or treating as cash the weekly payroll checks of Flamingo on said out of town banks."
It was further alleged that two of Flamingo's checks drawn on a Miami Beach bank had not been paid by that bank, and that defendants had refused to pay the plaintiff the sums due on the checks. Plaintiff demanded judgment for $4,002.69.
In their answer defendants denied the making of the promise to plaintiff and as an additional defense asserted that the promise was a collateral promise to pay the debt of another, was not in writing and therefore was barred by the Statute of Frauds. § 725.01, F.S., 1953, F.S.A.
Trial was had before a jury. At the conclusion of plaintiff's case defendants moved for a directed verdict which was denied. In denying the defendants' motion the court among other things said
"* * * I think it is solely a question to be determined by the Jury, whether or not there was a positive, straight out, direct promise on the part of these defendants to pay these checks * * * as issued by the Flamingo Company. * * *
"* * * I think the jury should be allowed to decide it. Whether or not they entered into this agreement unconditionally with these people, and if they find they did do it, they would be entitled to a verdict."
The defendants then rested, without offering any evidence, and renewed their motion for directed verdict which was denied.
Plaintiff moved for directed verdict which was granted. Motion for new trial and for judgment non obstante veredicto was denied, and final judgment entered.
We are required to determine whether the entry of a directed verdict was proper in this case. In order to do so we must determine whether the evidence adduced at the trial, and all inferences which might reasonably be drawn therefrom, was such that no view which the jury might lawfully take of it, favorable to the defendant, could be sustained under the law.
The facts of the case which are pertinent to this appeal are recited below.
Defendant Bruce Construction Corp. was under contract with the Veterans Administration to construct a building in Lake City, Florida. I.L. Mintzer, an official of that corporation, opened an account in the *290 name of the corporation in the plaintiff bank. On February 10, 1954 Mintzer introduced to Mr. G.A. Summerall, executive vice-president of the plaintiff bank, a Mr. J.A. Click. He explained to Summerall that Click was the representative of Flamingo Electrical Contracting Company, which was under subcontract with Bruce Construction Corp. for the electrical work in connection with the construction Bruce was engaged upon for the Veterans Administration. Mintzer told Summerall Click had been having difficulty obtaining his weekly payrolls. He said it was necessary that the payrolls be met in order to keep on with the work. Mintzer is alleged to have then promised to see that the checks were paid if the plaintiff would handle Flamingo's account and cash its weekly payroll checks, to be drawn upon a Miami bank.
Flamingo then opened an account with the plaintiff. Each week it would present its payroll check, drawn upon its account at the Miami Beach bank, and it would immediately receive from the plaintiff cash in the amount of such check. The Miami Beach checks were then forwarded through banking channels to the Miami Beach bank for collection.
All checks drawn on the Miami Beach bank were paid until the end of December, 1954, a period in excess of ten months. Flamingo's payroll check for December 30, 1954, and the one for January 5, 1955, were returned to the plaintiff bank by the Miami Beach bank for insufficient funds. The two checks totalled $5,386.59.
When the two checks were returned Flamingo had in its account with the plaintiff bank the sum of $1,383.90. The plaintiff charged the returned checks to this account, the result being that the account showed an overdraft of $4,002.69. Plaintiff's complaint was for that sum, $4,002.69.
The plaintiff never brought suit against Flamingo for this balance. Flamingo had gone into bankruptcy when the trial in the instant suit took place.
Defendant Bruce Construction Corp. maintained its checking account with the plaintiff until March, 1956. No attempt was made by plaintiff to charge this account with the sums sued for in this cause.
Plaintiff presented as evidence of the alleged promise the testimony of Summerall, its executive vice-president, and of J.A. Click, an official of Flamingo.
Summerall testified that "Mr. Mintzer promised to pay any checks and all checks that Mr. Click might give us for his weekly payrolls" in exchange for plaintiff's agreement to advance Click money for his payroll each week. He further said Mintzer said his firm "would take care of the checks when they were presented in Miami" and that "he promised unconditionally to see that these checks were paid." Summerall also said that the conversation with Mintzer "was an unconditional guarantee to us if we would handle these checks for Flamingo Electrical Contracting Company, he would guarantee us against any loss, he would see that the checks were paid on presentation at the Miami Beach Bank."
Click testified that Mintzer "assured Mr. Summerall that he would guarantee payment on it" and that he would "cover the checks in Miami", and when asked if Mintzer had told Summerall that he would cover the checks in Miami, he answered, "Yes sir, he guaranteed it."
Plaintiff contends that the evidence shows that the promise of the defendants as made by Mintzer was direct and unconditional, i.e. that the defendants would pay the checks of Flamingo. Plaintiff cites Harvey v. Bank of Center Hill, 1922, 83 Fla. 55, 90 So. 699, 700, as authority for the proposition that a promise by which one "guaranteed the payment" of the notes of another is an independent promise not within the statute of frauds.
Defendants argue that the testimony of both Summerall and Click, read together or *291 separately, shows that the promise was merely a guarantee to pay Flamingo's checks if they were not honored by the Miami Beach bank on which drawn. Defendants point out that the plaintiff's action in first charging Flamingo's account at the plaintiff bank with the bad checks before proceeding against defendants for the balance due is further evidence that the promise was collateral and indicates that plaintiff itself treated it as such by looking first to Flamingo for payment and turning to defendants only for the unsatisfied balance.
We do not adopt the view of either the plaintiff or defendant, for in our opinion, although the testimony and the evidence is not conflicting, nevertheless it does permit different conclusions based on reasonable inferences drawn from the evidence. As we read the evidence a jury viewing it could as logically find that the promise was collateral or conditional, i.e., was an agreement to pay Flamingo's payroll checks only if Flamingo's Miami Beach bank did not do so, as it could find that the promise was direct and unconditional.
It is true that the testimony and evidence in this cause is not conflicting but this fact does not mean that it does not permit different reasonable inferences which would justify a judgment for either party to be drawn therefrom. When such is the case it is improper to direct a verdict for either party.
The law on this point is well stated in the case of Gravette v. Turner, 1919, 77 Fla. 311, 81 So. 476, at page 477:

"When the facts are not in dispute, and the evidence, with all the inferences that a jury may lawfully deduce from it, does not, as a matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge. * * *" (Emphasis supplied.)
As indicated by our recent case of Hilkmeyer v. Latin American Air Cargo Expediters, Fla. 1957, 94 So.2d 821, the Gravette case is currently considered as expressive of this Court's opinion on these questions. Also see Katz v. Bear, Fla. 1951, 52 So.2d 903.
Under the facts of this case the determination of the nature of the promise should have been submitted to the jury.
Accordingly this cause is reversed for a new trial.
TERRELL, C.J., HOBSON and THORNAL, JJ., and PEARSON, District Judge, concur.