### 7464

### LORICK & LOWRANCE v. CALDWELL.

1. GUARANTOR—STATUTE OF FRAUDS.—A complaint alleging that defendant and another went to a merchant, informed him that he and the other party were in the lumber business together, that the other party would need feed for the stock to be used in the business, that he would pay for it, and directing the goods shipped to the other party, states a cause of action against the defendant *solely* for the goods.

2. IBID.—IBID.—PLEADINGS.—Where a complaint sets out facts appropriate to a cause of action against one as an original undertaking and others appropriate to a cause of action against the defendant as guarantor, the latter may be regarded as surplusage.

3. IBID.—IBID.—ISSUES.—Whether a contract is an original undertaking or to answer for the debt of another depends on the words used, the particular circumstances of the case and the general features of the transaction. Here the issue whether the case was within the statute of frauds, properly sent to the jury.

4. APPEAL.—EXCEPTION alleging error in refusing new trial on ground not set out in the record will not be considered.

Before HYDRICK, J., Richland, March term, 1909. Affirmed.

Action by Lorick & Lowrance against Howard Caldwell. From judgment for plaintiff, defendant appeals.

*Messrs. Clark & Clark,* for appellant, cite: *Promise to pay the debt of Hall must be in writing:* 1 McC., 100; 4 Strob., 430; 29 S. C., 13, 68 S. C., 396. *Test whether undertaking was original or collateral:* 4 Strob., 430; 29 S. C., 13; 1 McC., 100; 1 McC., 103; 4 Rich., 100; 1 McM., 280; 1 Rich., 223; 32 S. C., 276. *And is a question of law:* 1 McC., 106; 1 Rich., 226; 4 Rich., 104.

*Mr. Hunter A. Gibbes,* contra, cites: *As to original and collateral promises:* 20 Cyc., 163-4, 167, 162; 2 Bail., 56, 581; 3 McC., 102; 1 Bay., 38; 1 McC., 301; 13 S. C., 42; 1 McC., 100, 395, 575; 29 S. C., 14; 1 N. & McC., 124; 4 S. C., 102; 6 Carr. P., 241; L. R. 7 Q. B. Ex. Ch., 196; 3 Par. on Con., 20; 1 Smith's Cases, 474; 2 E. D. Smith, 411; 2 E. D. Smith, 193; 28 Vern, 155; 20 Vern, 205; 10 N. H., 205; 1 Speer, 349; 3 Hill L., 41; 141 U. S., 479; 7 U. S., 227, 386.

March 3, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action on an open account for goods sold and delivered.

The defendant denied the allegations of the complaint, and set up as a defense, that any promise he may have made, was to pay the debt of another, and, as it was not in writing, that it was void under the statute of frauds.

The jury rendered a verdict in favor of the plaintiff for $266.90, and the defendant appealed.

The main question in the case is, whether the promise of the defendant was void under the statute of frauds.

The appellant's attorneys contend, that the complaint sets forth a cause of action, upon the guaranty of the defendant, to pay the debt of another person, while the respondent's attorney submits, that the allegations of the complaint are appropriate to an action upon an original undertaking.

It will be necessary, therefore, to construe the complaint, the material allegations of which are as follows:

(1) "That heretofore, on or about the 8th day of October, 1907, the defendant, *Howard Caldwell,* came, in company with one Furman Hall, into the store of the plaintiff, *and represented that the said defendant and the said Furman Hall were in the lumber business together,* at Pelion, S. C., and that Mr. Hall needed corn, oats and meal and other supplies for his mules and *other stock, which were being used in the said business; that* the said *Howard Caldwell, then and there, requested the plaintiff to let* the said Furman Hall have such supplies as he required, and that he, the said defendant, would guarantee the payment of such goods so sold; that he, the said defendant, would pay the bills at his office in Columbia, and *that it would not be necessary to present such bills for payment at Pelion, S. C.*

(2) "That thereupon the said plaintiff considered the proposition of the defendant, and, upon the faith and credit of his guarantee to pay for and be responsible for such goods as may be sold to the said Furman Hall, agreed to sell the goods desired, upon the terms above stated; that accordingly the plaintiff, at the request of the said Furman Hall and the said *Howard Caldwell,* sold and delivered to the said Furman Hall, between the 8th day of October 1907, and the 16th day of November, 1907, certain goods, wares and merchandise, as shown by the itemized statement hereto annexed, and made a part of this complaint, for which the said *Howard Caldwell* agreed to pay the sum of $348.60, and that the said goods so sold and delivered were reasonably worth the said amount; that a part of the said goods were sold upon the individual order of the *defendant* for Furman Hall, as indicated in the said bill, and the remainder were sold upon the request of the said Furman Hall; and that all of the said goods were charged on the books of this plaintiff, as indicated on the bill hereto attached, and were sold to said Furman Hall, guaranteed by

said defendant, and *solely upon the faith and credit of such guarantee.*

(3) "That on the 16th day of November, 1907, the said *defendant,* paid to the plaintiff, on account of said indebtedness, by his check or check of *Howard Caldwell & Company,* the sum of $81.70, and that there is now due and owing by the said defendant to the plaintiff a balance of two hundred and sixty-six and 90-100 dollars.

(4) "That the said goods were sold and delivered, *solely upon the faith and credit of the said Howard Caldwell,* and *that the said Furman Hall, on his own account, did not have credit with this plaintiff, and if the promises and representations of the said Howard Caldwell had not been made, none of the said goods would have been sold and delivered as aforesaid;* that demand has been made of the defendant for the payment of the said sum of $266.90, and no part of the same has been paid by discount or otherwise."

The words which we have italicized show that the allegations of the complaint are appropriate to an action against the defendant, *solely* upon his promise to pay for the goods, sold and delivered, at his request, to a third party.

1      In this connection, we desire to call special attention to the allegations, that the defendant represented that he and Furman Hall were in the lumber business together, and that the supplies were needed for the stock of Furman Hall, which were being used in said business; inasmuch as they show that the promise of the defendant was original and not collateral. Furman Hall made no denial of said representation, the reasonable inference from which was, that he and the defendant were partners in business, in which event, both were jointly and severally liable and the defendant would be estopped from setting up the plea, that he was only a guarantor.

2      Under this construction of the complaint, these allegations upon which the appellant's attorneys rely to

show that the defendant is sued as a guarantor, may be regarded as surplusage.

The next question that will be considered is, whether there was any testimony whatever, tending to sustain the allegations of the complaint.

J. B. Duke, a witness for the plaintiff, testified as follows: "Q. You are an employee of Lorick & Lowrance? A. Yes, sir.  Q. Do you recollect Howard Caldwell and Furman Hall coming in the store of Lorick & Lowrance, October, 1907? A. Yes.  Q. Please state what occurred? A. I will say it was the 8th of October when he came in there and asked for Mr. Lorick, who had gone to dinner, and introduced Mr. Hall to me, and he stated that he and Mr. Hall were going into the mill business at Pelion.  Q. What kind of mill business? A. Lumber business, and that Mr. Hall would need feed for his stock, and a little later he would probably want some other stuff; and he gave me an order on the strength of his representations, for some stuff.  Q. Who gave you the order? A. Mr. Caldwell.  Mr. Caldwell stated that if we would ship the stuff to Mr. Hall he would pay the bills every thirty days.  We did not know Mr. Hall at all; it was only on the strength of Caldwell's representations that the goods were sold to him.  Q. To whom were they shipped? A. To Hall, at Pelion.  Mr. Caldwell also stated at the same time that he wanted some goods charged to his individual account, that he would have a horse down there.  He stated he wanted the two accounts kept separate in that way, and he explained his reason for wanting it so  *  * They were all shipped down there together.  Q. How was Hall's account charged?  A. It was charged to Hall.  Q. Anything else written on it?  A. Payment guaranteed by Howard Caldwell.  Q. Turn to October 29th.  A. That amount is $140.30.  Q. How is that charged?  A. To Furman Hall bought by Howard Caldwell.  Q. Do you know whether Howard Caldwell came in the store?  A.

Yes, sir; he came in there and gave the order himself. Q. October 31st? A. October 31st, amount $12.60; charged to Furman Hall and bought by Howard Caldwell. Q. Howard Caldwell himself got the goods? A. Yes, sir; and he ordered that himself. Q. Do you know whether or not Howard Caldwell has ever paid anything on this account? A. The books show he has."

A. H. Kohn, a witness for the plaintiff, testified: "Q. Are you in the employment of Lorick & Lowrance? A. Yes, sir. Q. Turn to item November 16th on the book; is that memorandum in your handwriting? A. It is. Q. What is it? A. $114.00. Q. How is the account charged? A. Ship to F. Hall, Pelion; bought by self and Caldwell. Q. Was any payment made by Caldwell on this account? A. Yes, sir. Q. How much was it? A. $81.70. Q. Please state whether Hall had credit with the company. A. No, sir; he did not."

We proceed to quote from the authorities: "It is often difficult to determine from mere words in which a promise is made, whether an undertaking is collateral to the engagement or liability of a third person, or an entirely independent and original undertaking. In such cases Courts must rely on the circumstances of each particular case, and its general features, in order to ascertain the intent of the parties, and how they viewed it when it is doubtful whether it was a contract of suretyship or guaranty, or original undertaking." 20 Cyc., 164.

"It is important to determine in each case of an undertaking, which in form purports to be a promise to pay the debt of another, whether it is such in fact; for it is well settled that if an oral agreement is in effect, a promise to pay the debt of the promisor himself, it is not within the statute of frauds, although the incidental result of its performance may be the discharge of the indebtedness of another person." 20 Cyc., 167-8.

"In order to bring an oral promise within the operation of the statute, the liability of the person, for whom the promise is made, must be capable of being enforced in law against him, for if there is no liability on his part to the promisee, the promisor would have no debt of another to answer for, and his promise, therefore, would necessarily be an original and independent, and not a collateral undertaking." 20 Cyc., 162.

"The inquiry, in these cases must, therefore, be directed to this point, namely, whether *any* credit was to be, or was given to the third person; in other words, whether *he* incurred *any* responsibility to the creditor. This is a question depending, not altogether on the particular *words* of the guarantee or promise of the defendant, but upon the particular circumstances of each case, and the general features of the transaction." Chitty on Con., 508.

"Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form, a promise to pay the debt of another." 3 Parsons on Contracts 24, quoted with approval in *Robertson* v. *Hunter,* 29 S. C., 14, 6 S. E., 850 and *Turner* v. *Lyles,* 68 S. C., 392, 48 S. E., 301; *Tindal* v. *Touchberry,* 3 Strob., 177.

"Where A introduced B to C, an upholsterer, and A in B's presence asked C if he had any objection to supply B with some furniture, and that if he would, he would be answerable, and C asked A how long credit he wanted, and A replied, 'he would see it paid at the end of six months.' B, not having paid the amount, C applied to A for payment, and he paid the money. The entry in C's books was, 'Mr. B per A.' It was held that the jury were warranted in finding that the undertaking on the part of A was not a collateral undertaking." Chitty on Con., 507a.

These authorities conclusively show that there was testimony tending to sustain the allegations of the complaint,

and that the question whether the case came within the statute of frauds was properly submitted to the jury.

One of the exceptions assigns error on the part of his Honor, the presiding Judge, in permitting the witness Dukes to testify, over objection, as follows: "Q. Who gave you the order? A. Mr. Caldwell; Mr. Caldwell stated that if we would ship the stuff, he would pay the bills every thirty days."

The objection to said testimony was as follows: "Mr. Clark: I object; that is not alleged. The complaint says Caldwell guaranteed the account, it does not state that he himself would pay it; they are suing on a guaranty."

This exception cannot be sustained, as our construction of the complaint shows that the action was not based upon a guaranty, but upon an original undertaking.

There is also an exception assigning error, in the refusal to grant a new trial, but that exception cannot be considered, for the reason that the grounds of the motion are not set out in the record.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE HYDRICK *did not sit in this case because disqualified.*