## 11215

### GAINES v. DURHAM *ET AL.*

#### (117 S. E., 732)

1. FRAUDS, STATUTE OF—LANDLORD'S AGREEMENT TO PAY FOR FERTILIZER FOR TENANT ORIGINAL UNDERTAKING, NOT WITHIN STATUTE OF FRAUDS.—A landlord's agreement to pay for fertilizer, used by a tenant on his property *held* an original undertaking on which the landlord was liable, and not a collateral agreement to answer for the debt of another within the Statute of Frauds.

2. APPEAL AND ERROR—OBJECTION THAT VERDICT SHALL BE AGAINST BOTH DEFENDANTS SHOULD HAVE BEEN RAISED BY REQUEST TO CHARGE OR ON MOTION FOR NEW TRIAL.—An objection to a verdict because it is against only one of two codefendants should have been raised either upon a request to charge or as grounds of a motion for a new trial.

Before MAULDIN, J., Pickens, June, 1922. Affirmed.

Action by R. G. Gaines against C. C. Durham and C. G. Masters. Judgment for plaintiff and defendant Masters appeals.

The circumstances in the *Rice v. Medlin* Case, referred to in the opinion, are substantially as follows:

The complaint alleged:

"That between the 26th day of January, 1918, and the 9th day of November, 1918, he (plaintiff) sold and delivered unto the defendant C. E. Medlin goods, wares, and merchandise * * * at the request, instance, and order of the defendant W. I. Rice, and the said W. I. Rice guaranteed the payment of the said amount, that no part of said

---

NOTE: On contemporaneous promise of one person to pay where benefit inures to another as a promise to answer for the default of another within the Statute of Frauds, see notes in 15 L. R. A. (N. S.), 214; 32 L. R. A. (N. S.), 598.

amount has been paid except the sum of $146.15, leaving a balance due unto the said A. Rice by the said C. E. Medlin and W. I. Rice, the sum of $94.83.   *   *   *"

The plaintiff testified:

"*   *   *   I live in the town of Bamberg, S. C., own and run a general mercantile business in said town.   I make advances to quite a number of farmers and their tenants. During the year 1918, I made advances in merchandise unto the defendants in this case.   Medlin was living on the plantation of W. I. Rice.   Medlin was running a share crop for W. I. Rice.   On January 26, 1918, W. I. Rice came into my store and brought C. E. Medlin with him and made arrangements with me to make advances unto Medlin for the current year.   I opened the account in the name of C. E. Medlin and W. I. Rice.   W. I. Rice told me he would be responsible for the account of Medlin, as he (Medlin) was running a share crop for him.   I would not have sold the goods to Medlin without the guarantee of W. I. Rice.   The advances were sold to the defendants herein for the sole purpose of aiding the defendant Medlin to make a crop for himself and W. I. Rice.   *   *   *   The original transaction was made between both the defendants, and the defendant W. I. Rice had as much interest in the account as the defendant Medlin.   *   *   *"

### CROSS-EXAMINATION

"*   *   *   I have no instrument in writing from W. I. Rice guaranteeing the payment of these goods.   W. I. Rice told me that, 'I am worth the money, and I will pay this account.'   I took a lien over the crop of Medlin.   I thought the crop would be sufficient to pay the account.   I would not have taken the lien without the guarantee of W. I. Rice.   This guarantee was verbal in the presence of witnesses.   Medlin has paid me a part of this account.   In the event that Medlin did not pay me, I expected W. I. Rice to pay the same as guarantor.   I did not surrender the lien of Medlin.   *   *   *"

Defendant C. E. Medlin testified:

" * * *  At the time I went to the store of A. Rice to arrange for the advances, W. I. Rice, my landlord, went with me. At the time we went to the store of A. Rice to arrange for the advances, W. I. Rice requested A. Rice to let me have them, and that he would pay the account. When the amount ran out A. Rice refused to let me have additional advances, and I told W. I. Rice as much, and W. I. Rice came out to Bamberg and made arrangements with A. Rice for me to get more goods, and came back home and told me that he had arranged same."

### Cross-Examination

"The advances were made to me by A. Rice. A. Rice let me have these goods upon W. I. Rice guaranteeing to pay them. I gave A. Rice a lien over my half of the crop. * * *"

Motion for nonsuit was refused, and the Magistrate rendered the following judgment:

"From the testimony, I find that W. I. Rice did not guarantee the account as a collateral promise, but that he had such a direct interest in the matter as to take the case out of the Statute of Frauds, as is laid down by the Supreme Court in the case of *Robertson v. Hunter*, 29 S. C., 13, 14, and also in the case of *Turner v. Lyles*, 68 S. C., 396."

The Circuit Court affirmed the judgment of the Magistrate for the reasons stated therein.

The exceptions to the judgment of the Circuit Court are as follows:

" * * * His Honor, the presiding Judge, erred, it is respectfully submitted, in not entering a nonsuit as to the defendant, W. I. Rice, upon the following grounds, to wit:

"(1) Because it clearly appears from the testimony that the alleged promise by the defendant, if any, was collateral, and, therefore, void under the Statute of Frauds.

"(2) His Honor erred, it is respectfully submitted, in not holding that under the evidence the defendant, Medlin, the party who received the goods, was primarily liable for the account; and under the testimony of the plaintiff when he stated that 'in the event that Medlin did not pay me, I expected W. I. Rice to pay the same as guarantor,' his Honor should have held that the alleged undertaking on that part of W. I. Rice, was collateral, and, therefore, not enforceable.

"(3) His Honor erred, it is respectfully submitted, in distinguishing the case of *Turner v. Lyles,* 68 S. C., 396, from the case at bar; whereas, his Honor should have held that there was no new consideration moving to the defendant in the case at bar; although the defendant, W. I. Rice, may have been interested in the share crop with Medlin, such interest would not constitute a new consideration, as defined by the Court in the case of *Turner v. Lyles, supra.*

*Messrs. Martin, Blythe, Craig & Keith,* for appellant, cite: *Collateral undertaking:* Clark, Conts. (2nd Ed.), 67, 68; 29 S. C., 9; 1 McC., 100; 27 C. J., 140, Sec. 28; Note, 65–66. *Interest of landlord in tenant's affairs will not take case out of Statute of Frauds:* 68 S. C., 392; 69 S. E., 898; 29 S. C., 9. *Joint liability if any:* Clark, Conts. (2nd Ed.), 380; 2 Speer, 495; 109 S. C., 145; 23 Cyc., 804. *Whether promise is within statute is question of law:* 20 S. C., 9; 1 McC., 100.

*Messrs. Carey & Carey,* for respondent, cite: *Original promise:* 85 S. C., 94; 3 Pars., Conts., 24; 29 S. C., 14; 68 S. C., 392; 3 Strob., 177; 86 S. C., 315; 27 S. C., 150; 85 S. C., 94. *Verdict conclusive:* 86 S. C., 316.

May 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $71.61 upon an account for fertilizer sold by the plaintiff to the defendants.

Masters owned the land upon which the fertilizer was to be used, and Durham was his tenant.

The evidence tends to show that Durham applied to the plaintiff for the fertilizer, and the plaintiff, knowing that Durham was a tenant upon the land of Masters, before allowing Durham to obtain the fertilizer, went to Masters and asked him about selling to Durham; that Masters said, "Let Durham have what he wants and I will see that it is paid"; that Durham got the fertilizer, and it was charged upon the plaintiff's books to both Durham and Masters; that plaintiff made frequent efforts to collect from Durham and, failing, made demand upon Masters, which being refused, suit was instituted in Magistrate's Court against both.

The case was tried by a jury, which rendered a verdict in favor of the plaintiff against Masters alone; no reference being made to Durham.

Defendant, Masters, appealed to the Circuit Court, taking by his exceptions the following positions: (1) That the undertaking of Masters was not an original one, but collateral, to answer for the debt of Durham, and, not being in writing, was obnoxious to the Statute of Frauds. (2) That the undertaking of Masters being collateral only, if valid, the verdict should have been against both defendants.

Upon the hearing of the appeal, the Circuit Judge overruled the defendant's exceptions and affirmed the judgment of the Magistrate's Court.

The defendant now appeals to this Court upon the same grounds made upon the appeal to the Circuit Court.

As to the first position: Masters being the landlord of Durham, was vitally interested in his obtaining fertilizer for use in the cultivation of the crop, and, under these circumstances, his undertaking to see that what he obtained was paid for was an original and not a collateral undertaking.

In *Lorick v. Caldwell*, 85 S. C., 94; 67 S. E., 143, the Court approved the following:

"Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form, a promise to pay the debt of another."

In *Tindal v. Touchberry*, 3 Strob., 177; 49 Am. Dec., 637, it is said:

"In the case of *Farley v. Cleveland* (4 Cow. N. Y., 432), it was held that where the promise was founded upon a new and original consideration, of benefit to the defendant, or hurt to the plaintiff, the subsisting liability of the original debtor was no objection to the recovery."

In *Hindman v. Langford*, 3 Strob., 207, quoting from the syllabus, it is held:

"A promise is taken out of the statute by a new and distinct consideration, coextensive with it, and moving not to the third person, but to the promisor; not mere loss to the promisee but gain to the promisor."

The Court said:

"Langford's agreement was a promise to answer for the debt of a third person who was still held liable; but it was founded upon a new and distinct consideration, coextensive with it, and moving not to the third person, but to the person who made the promise."

In *Ellis v. Carroll*, 68 S. C., 376; 47 S. E., 679; 102 Am. St. Rep., 679, the same principle is announced. Also in *Turner v. Lyles*, 68 S. C., 392; 48 S. E., 301. See, also, *Robertson v. Hunter*, 29 S. C., 9; 6 S. E., 850, citing 3 Parsons, Cont., 24; *Rice v. Medlin*, 116 S. C., 213; 107 S. E., 911. (The Reporter will append hereto in a note the circumstances in the *Rice v. Medlin Case*, which the Court held to have constituted an original undertaking, imperfectly set forth in the report of that case.) In *Eggart v. Barnstine*, 3 McCord, 162; 15 Am. Dec., 625, it is held that

if the contract import a benefit to the promisor, it will be deemed an original undertaking.

· In *Emerson v. Slater,* 22 How., 28; 16 L. Ed., 360, the Court said:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

See, also, *Davis v. Patrick,* 141 U. S., 479; 12 Sup. Ct., 58; 35 L. Ed., 826. *Hurst Hardware Co. v. Goodman,* 68 W. Va., 462; 68 S. E., 898; 32 L. R. A. (N. S.), 598; Ann. Cas. 1912B, 218. *Saginaw M. Co. v. Mower,* 154 Mich., 620; 118 N. W., 622. *McGowan Co. v. Coal & Lumber Co.,* 41 Mont., 211; 108 Pac., 655. *Steed v. Day* ('Tex. Civ. App.), 164 S. W., 1057. *Davies v. Carey,* 72 Wash., 537; 130 Pac., 1137.

"If a person claimed to have made the promise to pay the debt of another is interested in the business of such other and primarily to protect his own interests made such promise, it is an original undertaking, and it is not necessary to its validity that the party to whom the promise was made and who sold and delivered the merchandise should have intended to hold the promisor alone responsible." *Peters v. Raven,* 159 Ill. App., 122.

In *Henderson v. Hughes,* 4 Ga. App., 52; 60 S. E., 813, where supplies were furnished to a tenant upon the landlord's promise to see the account paid, it was held:

"In such case the authority to sell to the tenant, given by the landlord to the merchant, is an original undertaking, and not an agreement to pay the debt of another." (From the syllabus by the Court.)

In *Whitehurst v. Padgett,* 157 N. C., 424; 73 S. E., 240, the facts were these, practically identical with those in the case at bar: The tenant applied to the merchant for fertilizer to be used on the landlord's land. The merchant did not furnish it until after he had seen the landlord. The landlord told him, "All right, go ahead and furnish Padgett [the tenant], and I will see that you get your money." The Court held that the undertaking of the landlord was original, saying:

"A promise is not within the Statute of Frauds if it is based upon a consideration and is an original one, and that it is original * * * if the promise is for the benefit of the promisor and he has a personal, immediate, and pecuniary interest in the transaction."

In *Lovell v. Haye,* 85 Wash., 109; 147 Pac., 632, the facts were these: The landlord told the merchant to let the tenant "have what he wanted, and he would pay him dollar for dollar"; at least there was evidence tending to prove that, although it was denied by the landlord. The Court held that if the merchant's version of the matter was sustained, the undertaking of the landlord was original upon the ground of the landlord's personal interest:

"On the other hand, Haye [the landlord] had an interest in seeing that Gibson [the tenant] was supplied with such goods, for otherwise he would not have been able to carry on the harvest operations."

As to the second position: This is based upon the theory that the undertaking of Masters was collateral. As has been shown, there was abundant evidence to sustain what was indirectly the conclusion of the jury and of the Circuit Judge on appeal that the undertaking was original; there is no foundation for the exception covering this position.

Besides, if there had been any force in the position it should have been urged upon a request to charge or a motion for a new trial, neither of which was done.

There is evidence from which the Court below may have come to the conclusion that the credit in this transaction was extended to both of the defendants, as principals, jointly liable. There is respectable authority for holding that under such circumstances the promise is not to answer for the debt of another, and that the statute does not apply. See 27 C. J., 144, § 29. As the point has not been raised or discussed, we are not to be understood as passing upon it.

The judgment of this Court is that the judgment appealed from be affirmed.