13506

PRICE v. BETHEA

(166 S. E., 409)

Mr. J. P. Lane, for appellant,

Messrs. Gibson & Muller, for respondent,

November 4, 1932.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN.

In this case Price, the appellant, seeks a reversal of the judgment of the Court below in his suit against Bethea, the respondent, wherein the jury found in favor of Bethea on his counterclaim or set-off, thereby depriving Price of his alleged right to recover of Bethea the sum of $450.00.

Bethea had rented a tobacco warehouse from Planters Warehouse Company for a period of years, and, for the year 1930, he had employed Price, a man with experience in the tobacco business, to assist him. The employment was under a written contract by which Price was to receive for his services the sum of $1.00 per thousand pounds of tobacco sold at the warehouse up to and including one million pounds; over one million pounds Price was to receive 50 cents per thousand. It would appear that this contract is in no way involved in this appeal. About one million pounds were sold and Price was admittedly due $1,000.00. However, at this point, a disturbing factor appears.

Bethea had employed one Hardy to go out amongst the farmers and solicit the storage of tobacco in his warehouse. Hardy was permitted to purchase tobacco "on the floor." For the benefit of those of us residing outside the tobacco belt of this State it may be of interest to describe the manner of these warehouse sales: The farmer brings his tobacco to the warehouse and there it is weighed, placed in baskets, and put upon the warehouse floor in rows. At the sales the buyers bid upon each pile of tobacco and the auctioneer in charge of the sale sells to the highest bidder. At the conclusion of the sale the warehouseman pays the farmer for the tobacco and each buyer settles by draft with the warehouseman for the amount of his purchase. The farmer is thus paid in full and the warehouseman looks to the purchaser for payment.

According to Bethea, he became dissatisfied with the services of Hardy, especially in the way in which Hardy was buying tobacco, discharged him, and denied him the right to further purchase tobacco on the floor. It is further testified by Bethea that the day after the discharge of Hardy, Price came to Bethea and insisted upon the re-employment of Hardy, saying that the business would fall off, that Hardy would work for a competitor thereby injuring the business, and other facts pertaining thereto. Further it appears from the testimony of Bethea that Price agreed to bear one-half of any loss which Bethea might sustain by reason of the re-employment of Hardy. Thereupon Hardy was re-employed by Bethea and the resultant loss through Hardy was $900.00.

Price denied all of this testimony.

At the conclusion of the employment of Price it appeared that Price was entitled to $1,000.00 for his services. Bethea paid him $550.00 and retained $450.00, one-half of the Hardy loss. Thereupon Price brought suit for $450.00 against Bethea and Bethea set up as a defense the agreement of Price to bear half of the Hardy loss. The jury found in favor of Bethea and Price appealed to this Court.

It is perfectly clear that, after the discharge of Hardy, a question of fact arose as to the new employment of Hardy and the part taken in that new contract by both parties to this suit. The testimony offered by Bethea as to this new contract was entirely proper, as the authorities hereinafter referred to will unquestionably show. If the new contract with Hardy were made for the benefit of Price or for the joint benefit of Price and Bethea, the promise of Price to pay one-half of the loss occasioned by the re-employment of Hardy would take the agreement out of the operation of the statute of frauds (Code 1932, § 7044).

The interest of Price in the re-employment of Hardy is quite apparent. The more tobacco which Hardy could bring or cause to be brought to the warehouse, the greater the sales, and the greater the sales, the greater the commissions received.

Practically all of the authorities in this State, as well as some from other jurisdictions, are set out in the leading and dissenting opinions in the case of *McCoy v. Hydrick,* 143 S. C., 135, 141 S. E., 174, 56 A. L. R., 953, and from that case we take the following extract from *Lorick v. Caldwell,* 85 S. C., 94, 67 S. E., 143, 145, which appears to be the universally adopted principle: " ' Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another.' "

We, therefore, hold that the defense of the statute of frauds was not available to the plaintiff as a matter of law.

The only remaining question is as to alleged error on the part of the Circuit Judge in submitting to the jury the application of the statute of frauds to the alleged agreement.

It must be borne in mind that the agreement as to payment of half of the possible loss incident to the re-employment of Hardy, as testified to by Bethea,

was directly contradicted by Price. There was no ambiguity in the agreement from the standpoint of Bethea, and, under the well-recognized practice, it is the duty of the Circuit Judge to submit such contracts to the jury. But here the question was not as to ambiguity but as to the very existence of the contract itself, a clear question of fact. The position of the appellant in alleging error on the part of the Circuit Judge in not construing the contract is virtually an admission on his part that a contract did exist; a denial of which constituted the defense of the plaintiff to the set-off claimed by the defendant. The Circuit Judge did not endeavor to construe the alleged contract. Such a course on his part would have been based upon an acceptance as true of all the disputed testimony of Bethea. He submitted the whole case to the jury under proper and appropriate instructions. This course was more favorable to the appellant in that the jury was permitted to pass upon all the testimony, including the denial of Price that a contract ever existed. We do not see in what possible manner the appellant could have been prejudiced by such course of the Circuit Judge.

All exceptions have been carefully considered and disposed of herein.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.