14070

STACKHOUSE v. PURE OIL CO. *ET AL.*

(180 S. E., 188)

*Messrs. Thomas, Lumpkin & Cain* and *W. F. Wimberly,* for appellants,

*Messrs. Melton & Belser,* for respondent,

May 23, 1935.

The opinion of the Court was delivered by MR. G. B. GREENE, ACTING ASSOCIATE JUSTICE.

Mrs. Elizabeth H. Stackhouse of Columbia, the owner of a lot with improvements at the northeast corner of Lady and Sumter Streets, by written lease dated the .... day of September, 1929, let said premises to Palmetto Petroleum Company, a corporation, for a period of three years, beginning January 1, 1930, and ending December 31, 1932, at a

rental of $410.00 per month, payable in advance. At that time the said corporation, which was controlled by Grover C. Richey, was engaged in the distribution of the products of the Pure Oil Company, a corporation under the laws of the State of Ohio. By a written instrument dated March 12, 1930, and signed by Mrs. Stackhouse, Grover C. Richey, and Palmetto Petroleum Company, the said lease was assigned to the said Richey, he thereby succeeding to all the rights and privileges and assuming all the obligations of the original lessee. Soon thereafter the Palmetto Petroleum Company went out of business in Columbia, and People's Oil Company, a corporation, was organized under the laws of this State, on April 23, 1930, and thereafter handled the products of the Pure Oil Company until its business was taken over by Pure Oil Company of the Carolinas, a corporation under the laws of the State of North Carolina. Just what contractual relations existed between People's Oil Company and the Pure Oil Company and between Pure Oil Company of the Carolinas and the Pure Oil Company does not fully appear. All three of them were made defendants in this action, and in their joint answer the agency of the other two for the Pure Oil Company was denied. However, the question of agency was eliminated at the trial of the case as shown by order for judgment in which this appears: "At the hearing it was conceded by counsel for the defendants that no distinction should be made between the several defendants."

Mrs. Stackhouse died March 2, 1931, leaving a will by which she devised all her real estate to her husband, T. B. Stackhouse, plaintiff in this action, for life, and under that will he became entitled to the rents accruing under said lease. At this time Grover C. Richey was commission agent for defendants in Columbia and continued as such for some time thereafter. It appears that he continued to sell the products of the Pure Oil Company on commission as late as 1933.

This action was brought in January, 1934. In Paragraph 7 of the complaint it was alleged: "7. That subsequently

thereafter and during the month of April and May, 1931, the plaintiff agreed in writing with the defendants, The Pure Oil Company and People's Oil Company to reduce the rental upon the said premises to Three Hundred and Seventy-five ($375.00) Dollars per month, with the understanding and upon the condition that the said defendants would pay the said rental of Three Hundred and Seventy-five ($375.00) Dollars per month and would see that the said amount was paid to this plaintiff by check dated between the first and the tenth of each month, the said arrangement to continue as long as the said Grover C. Richey continued as the commission agent for the defendants in Columbia."

The complaint further alleged: "8. That the said defendants have failed and refused to pay the rental of Three Hundred and Seventy-five ($375.00) Dollars per month for the months of April and May, 1932, and for the month of November, 1932, and also for the month of October, 1932, on which, however, a payment of Two Hundred and Fifty ($250.00) Dollars was made by the said Grover C. Richey, who continued throughout the said period as the commission agent for the said defendants, and that there is now a total balance of principal due to this plaintiff by the said defendants of Twelve Hundred and Fifty ($1,250.00) Dollars, with interest upon the monthly instalments from the 10th day of each month."

Plaintiff demanded judgment in the sum of $1,250.00, with interest.

By their answer defendants denied that they had entered into such an agreement with plaintiff as was alleged in the complaint, and in connection with this denial they alleged: "* * * that by virtue of agreement between the plaintiff, T. B. Stackhouse, and the said Grover C. Richey, and by the directions of the said parties, the defendant, People's Oil Company, agreed to if, as and when the said Grover C. Richey had commissions on hand with it, pay the said rental

on or before the 10th day of each month to the said plaintiff, T. B. Stackhouse, and obligated itself no further in the premises."

The answer further denied that during the months of April, May, October, and November, 1932, there were any funds in their hands to the credit of Grover C. Richey with which to pay said rents. It also contained a general denial of any liability whatsoever on their part to the plaintiff on account of the matters alleged in the complaint.

The case came on for trial in the County Court for Richland County, Hon. M. S. Whaley, County Judge, presiding. A jury trial was waived. At the conclusion of plaintiff's testimony counsel for defendants moved for a nonsuit upon the grounds: (1) That there was no evidence tending to prove that defendants entered into any agreement that would bind them as parties to the alleged lease or as guarantors thereof; and (2) that the evidence showed that plaintiff without the knowledge or consent of defendants had taken additional security from Richey and extended the time for the payment of said rent, thereby releasing defendants from any agreement they might have made in regard thereto. This motion was overruled. After all the testimony was in, counsel for plaintiff moved to amend the complaint by striking out the words "in writing," in line two of Paragraph seven of the complaint. Counsel for defendants at the same time moved to be allowed to amend the answer by setting up the defense that plaintiff without the knowledge or consent of defendants had accepted security from Richey and had extended the time for the payment of said rent, thereby releasing defendants from any liability whatsoever. Both amendments were allowed by the presiding Judge. Counsel for defendants then moved for a directed verdict upon the same grounds as those upon which the motion for nonsuit was made. This motion was overruled. After argument on the merits of the case, the presiding Judge signed an order giving plaintiff judgment against all of the defendants in

the sum of $1,417.20. Said judgment was duly entered and the case appealed to this Court.

The main question raised by the exceptions is by an assignment of error on the part of the presiding Judge in not granting a nonsuit and directed verdict in favor of defendants, and in not granting judgment in their favor upon the ground that there was no evidence to support a verdict and judgment for plaintiff upon any theory of the complaint. We have heretofore quoted from Paragraph 7 of the complaint in which it was alleged that plaintiff by agreement with defendants reduced the rental on the premises in question and extended the time for payment thereof "with the understanding and upon the condition that the defendants would pay the said rental of $375-.00 per month and would see that said amount was paid to this plaintiff by check dated between the first and the tenth of each month." It seems to us that under this allegation it was open to plaintiff to prove liability on the part of defendants either as original promisors or as guarantors in respect to the payment of these rents. Such was the construction placed upon the complaint by all of the parties and by the presiding Judge as shown by the record.

Was there sufficient evidence upon which to base a finding that there was an original undertaking or promise on the part of defendants to pay the rental of $375.00 on or before the 10th of each month? It must be borne in mind that defendants were charged in the complaint with liability on a new agreement and not on the original lease. There was put in evidence a series of letters passing between plaintiff and defendants during the months of April and May, 1931. These letters were as follows:

"April 11, 1931.

"Mr. W. L. Wofford, Vice-President,

"Palmetto Petroleum Co.,

"Atlanta, Ga.

"In re: Palmetto Petroleum Company and G. C. Richey. lease

"Dear Sir.:

"Some three months ago I agreed to reduce the rent on the building leased to your company, located at the N. E. Corner Lady and Sumter Streets, Columbia, S. C., from $410.00 per month to $375.00 per month, conditioned upon your writing me a letter that from that date until the expiration of the lease a check for $375.00, in payment of rent in advance, would be in my hands not later than the fifth of each month; and Mr. Richey promised to have you write me a letter that this rent would be paid as above stated.

"I have not received such letter and today am in receipt of a check for $375.00, signed J. M. Bottomly, for $375.00 in payment of April rent, said check being dated April 6th and sent to me by hand today by Mr. Richey.

"Will you please confirm the agreement as above outlined if in accordance with your arrangement with Mr. Richey?

"Yours truly,

"T BS/h"

"April 14th, 1931.

"Mr. T. B. Stackhouse,

"The Standard Warehouse Company,

"Columbia, South Carolina.

"Dear Mr. Stackhouse:

"I am receipt of your letter 11th inst., relative to rent due you each month on Service Station located at the Northeast corner of Lady and Sumter Streets, Columbia, S. C.

"This rent is due you each month by Mr. Grover C. Richey, our Commission Agent in Columbia, but by arrangements with Mr. Richey we pay this rent for his account.

"I note that you request a letter from us assuring you that the rent check will be in your hands not later than the 5th of each month. I wish to advise in this connection that while we exert every effort possible to get all rent checks out between the first and third of each month, it sometimes is impossible to regulate our office routine to get them out

exactly on the dates mentioned, and at times it is as late as the 8th or 9th of the month before checks leave this office, and for that reason all leases which we have are written to read that 'rent is payable between the first and tenth of each month'.

"We will be glad to assure you that we will mail your check for Mr. Richey's account each month between the first and tenth.

"Of course, you understand that this rent is an obligation of Mr. Richey's.

"Will you kindly write Mr. Richey a letter and forward me a copy of same authorizing reduction of rent on this Service Station from $410.00 per month to $375.00 per month, and I will thank you to have this letter signed by yourself, and as Administrator for the Estate of Mrs. T. B. Stackhouse.

"Yours very truly,

"THE PURE OIL COMPANY,

"JIB/wc.                                    J. I. BUSBEE."

"April 15, 1931.

"Pure Oil Co.,

"Atlanta, Ga.

"Attention: Mr. J. I. Busbee.

"Dear Mr. Busbee:

"Replying to yours of the 14th inst.

"If the Pure Oil Company will assume the obligation of the rental, I will write such a letter as you request.

"But the next time the rent is not paid on or before the 10th of the month in which it is due, the rent will be $410.00 as called for in the agreement.

"Yours truly,

"TBS/h.

"CC: Mr. Grover C. Richey, Columbia, S. C."

"April 22, 1931.

"Mr. T. B. Stackhouse,

"C/O Standard Warehouse Company,

"Columbia, S. C.

"Dear Mr. Stackhouse:

"With further reference to rent checks due you each month, by G. C. Richey, on property located on the N. E. corner of Lady & Sumter Streets, Columbia, S. C.

"We will be glad to forward you between the 1st and the 10th of each month check in the amount of $375.00, in payment of rental on this station. This check is for the account of Mr. G. C. Richey with whom you have the agreement.

"Will you kindly write Mr. Richey and send us a copy authorizing the reduction of rent from $410.00 to $375.00 per month.

"Yours truly,

"THE PURE OIL COMPANY,

"JIB/mh.                          J. N. BOTTOMLY."

"April 23, 1931.

"Pure Oil Company,

"140 Spring St., S. W.

"Atlanta, Ga.

"Attention: Mr. J. N. Bottomley.

"Dear Mr. Bottomley:

"Replying to yours of the 22nd. inst.

"Am I to understand from your letter of this date, that your Company will during the remainder of the life of my lease to G. C. Richey, send me a check for $375.00 between the first and tenth of each month in payment of the rent for that month?

"Yours truly,

"TBS/h.

"Dict. not read."

"May 4th, 1931.

"Mr. T. B. Stackhouse

"The Standard Warehouse Company,

"Columbia, South Carolina.

"Dear Mr. Stackhouse:

"I am in receipt of your letter April 23rd., with reference to the rent due you by Mr. Grover C. Richey.

"We wish to advise that we will be glad to see that check reaches you not later than the 10th of each month in the amount of $375.00 for rent due you by Mr. Richey. This arrangement, of course, will only be in effect as long as Mr. Richey is our commission agent in Columbia.

"Yours very truly,

"PEOPLES OIL COMPANY,

"JIB/we.                                    J. M. BOTTOMLEY.

"CC: MR. GROVER C. RICHEY."

The testimony showed that during the remainder of 1931, and in January, 1932, checks for the rent were issued directly by defendants to plaintiff. The checks for November and December, 1931, and January, 1932, were put in evidence. On the November check this notation appeared: "Rent on Lady and Sumter Streets for month of November, 1931, $375.00." Similar notations were made on the other check. When there was default in the payment of rent for the months of May and June, 1932, plaintiff wrote defendants demanding payment thereof in accordance with their agreement. The same thing occurred when there was default in October and November of the same year. The receipt of these letters was never acknowledged by defendants and no denial of their liability was made until many months thereafter. Plaintiff testified that in December, 1932, two officers of defendant companies called at his home and when shown the letter of May 4, 1931, admitted the liability of defendants. There were other facts and circumstances brought out in the trial of the case that might be mentioned in this connection, but we do not deem it necessary to refer

to them. In our opinion there was, under the decisions of this Court, sufficient evidence upon which to base a finding that the agreement entered into by defendants was an original undertaking on their part to pay this rent.

The leading case on this subject is the case of *Lorick & Lowrance v. Caldwell,* 85 S. C., 94, 67 S. E., 143, 145. In this case it was held that, where goods were sold at the instance of Caldwell, and charged to one Hall with a notation upon the account that the account was "guaranteed" by Caldwell, the obligation of Caldwell was an original obligation and not a guaranty to answer for the debt of another. This case, as well as several other cases, hereafter cited, arose in regard to the application of the statute of frauds, but the principle involved is precisely the same in the case at bar. In its decision the Court stated in making the distinction between an original undertaking and a guaranty:

"We proceed to quote from the authorities: 'It is often difficult to determine from mere words in which a promise is made whether an undertaking is collateral to the engagement or liability of a third person, or an entirely independent and original undertaking. In such cases courts must rely on the circumstances of each particular case and its general features, in order to ascertain the intent of the parties, and how they viewed it when it is doubtful whether it was a contract of suretyship or guaranty, or an original undertaking.' 20 Cyc., 164.

" 'It is important to determine in each case of an undertaking, which in form purports to be a promise to pay the debt of another, whether it is such in fact; for it is well settled that, if an oral agreement is in effect a promise to pay the debt of the promisor himself, it is not within the statute of frauds, although the incidental result of its performance may be the discharge of the indebtedness of another person.' 20 Cyc., 167, 168.   *   *   *

" 'Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose

of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another.' 3 Parsons on Contracts 24, quoted with approval in *Robertson v. Hunter,* 29 S. C., [9], 14, 6 S. E., 850, and *Turner v. Lyles,* 68 S. C., 392, 48 S. E., 301; *Tindal v. Touchberry,* 3 Strob., 177, 49 Am. Dec., 637. * * *

"This exception cannot be sustained, as our construction of the complaint shows that the action was not based upon a guaranty, but upon an original undertaking."

This case has been cited and followed in many cases down to the present time including those found in the following reports: *C. B. Crosland Co. v. Pearson,* 86 S. C., 315, 68 S. E., 625; *Mullaly v. Smyth,* 96 S. C., 14, 17, 79 S. E., 634; *Davis v. Blum,* 104 S. C., 218, 221, 88 S. E., 465; *Fox & Weeks v. Laney,* 107 S. C., 318, 321, 92 S. E., 1044; *Rice v. Medlin,* 116 S. C., 213, 214, 107 S. E., 911; *Gaines v. Durham,* 124 S. C., 435, 440, 117 S. E., 732; *Farmers' Bank v. Eledge,* 126 S. C., 517, 521, 526, 120 S. E., 362; *Price v. Bethea,* 167 S. C., 376, 379, 166 S. E., 409.

In the case just cited the use of the expression "guaranty" in the complaint itself and in the evidence was held to have no vital bearing upon the real nature of the undertaking.

The same principle was recently applied by this Court in the case of *Price v. Bethea,* 167 S. C., 376, 166 S. E., 409, where it was held that a warehouse employee's promise to bear half of the warehouseman's losses by re-employing a discharged employee was an original undertaking where the re-employment meant greater commissions for the promisor.

In the case of *Farmers' Bank v. Eledge,* 126 S. C., 517, 120 S. E., 362, 363, where money was lent to a landlord's tenant upon the representation of the landlord that he would sign the note to be given as security for the money, it was held that such promise on the part of the landlord created an original undertaking on the part of the landlord. In its opinion this Court approved the finding of the lower Court upon the ground as stated by the Court: " * * * that the

liability of the appellant was original and not collateral, as the relation of landlord and tenant existed between him and the person to whom the money was advanced to make the crop; and that the advances were made primarily for the benefit of the plaintiff."

The same conclusion was reached by this Court in the case of *Gaines v. Durham*, 124 S. C., 435, 117 S. E., 732, 734, in which it was held that a landlord's agreement to pay for fertilizer used by a tenant on his property was an original undertaking on which the landlord was liable, and not a collateral agreement to answer for the debt of another. In its decision this Court said: "As to the first position: Masters being the landlord of Durham was vitally interested in his obtaining fertilizer for use in the cultivation of the crop, and under these circumstances his undertaking to see that what he obtained was paid for was an original and not a collateral undertaking."

In *Lorick & Lowrance v. Caldwell*, 85 S. C., 94, 67 S. E., 143, 145, the Court approved the following: "Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another."

We are not to be understood as holding that the agreement in the instant case creates an original undertaking. We hold only that there was sufficient evidence upon which to base such a finding; for, in cases of this kind where there is any uncertainty as to the nature of the agreement, whether it is a collateral or an original undertaking, this question should be submitted to the jury and the finding of the jury thereon is conclusive. *Lorick & Lowrance v. Caldwell; Gaines v. Durham*, and *Price v. Bethea, supra.*

The same rule is applied in the construction of all contracts where there is ambiguity or doubt. It is only where contracts are free from doubt that the

construction is a matter of law for the Court. *Huntley v. Sullivan,* 170 S. C., 391, 170 S. E., 664. The presiding Judge in the instant case was also acting as a jury in passing upon questions of fact, and we are unable to say whether he concluded that the agreement was a collateral or an original undertaking. Suffice it to say that he found that defendants had entered into a binding agreement to pay the rent in question and such finding supported by the evidence cannot be disturbed by this Court.

Appellants contend that the evidence showed "that Grover C. Richey was working merely on a commission, and that only to the extent of the commissions on hand did the defendant companies agree at any time to make payment to the plaintiff, and all of such payments in so far as said commissions would permit were paid and the Court should have so found and held." Such is not our construction of the letters that passed between the parties. In those letters it is plainly stated that appellants' undertaking would continue so long as Richey was their "commission agent in Columbia." Although plaintiff at one place testified that it was his understanding that "as long as those commissions amounted to enough to pay my rent the Pure Oil Company would see that I got the rent," the remainder of his testimony, as well as his letters to defendants, which were put in evidence, showed that he was relying upon the promise made by them in their letters during the months of April and May, 1931. However, there is evidence to the effect that Richey's commissions at the time of default were more than sufficient to pay his monthly rent. Plaintiff so testified, stating that Richey had one contract, the commissions from which were sufficient to pay the rent. The evidence showed that his commissions ranged from $1,200.00 to $2,000.00 per month. Robert Patten, an officer of one of the companies, in a letter to respondent, dated September 19, 1933, made this significant statement: "Had we known that you were trying to hold us responsible for these rents, we

would have protected ourselves by mailing you a check each month, as we have done this year, and then have charged the rent back to Grover's commission account." So, if the presiding Judge found that appellants had limited their liability as they claimed to have done, he must have found also that Richey's commissions were sufficient to pay the rent. This contention cannot be sustained.

Appellants further contend that there was no consideration to support either a guaranty or an independent agreement to pay the rent. This contention cannot be sustained. Richey, the lessee, was engaged in selling defendants' products on commission and was known as their commission agent. They had a vital interest in his ability to continue operations. The reduction of the rent and the extension of time for its payment constituted a sufficient consideration for their agreement, which meant "a detriment to the promisee and a benefit to the promisor." The cases of *Lorick & Lowrance v. Caldwell; Gaines v. Durham; Price v. Bethea; Farmers' Bank v. Eledge, supra,* are sufficient authority to cite in support of this proposition.

Appellants assign error to the presiding Judge in not giving judgment in their favor because the evidence submitted by plaintiff tended to etsablish a new agreement and not such an agreement as was alleged in the complaint. The action was based upon an alleged new agreement entered into in April and May, 1931, and all of plaintiff's testimony was directed to the proof of such an agreement. This exception cannot be sustained.

Appellants further assign error to the presiding Judge in not holding that acceptance of security for these rents by respondent from Richey and an extension of time of payment released appellants from any agreement they may have made. It developed in the trial of the case that on May ...., 1932, respondent did accept from Richey a chattel mortgage securing the past-due rents for April and May, 1932. The mortgage, which was offered

in evidence, did not purport to secure a note or any other separate obligation payable in the future except as contained in the following provision:

"Whereas the rent for the months of April and May, 1932, amounting to $750.00 is now in arrears, and the undersigned desires not only to guarantee and secure the payment on or prior to 1 November, 1932, of the said rent now in arrears, with interest at the legal rate thereon from May 1, 1932, but also the payment on or before the 10th day of each month of the rent hereafter accruing for each month.

"Now, therefore, the condition of this obligation is such that if I, the said Grover C. Richey, my heirs, executors and administrators, shall and do well and truly pay or cause to be paid unto the above named T. B. Stackhouse the said rent in the sum of $750.00, with interest as aforesaid, on or before 1 November, 1932, and the rent accruing each month hereafter on or before the 10th day of such month without fraud or further delay, then this obligation shall be void and of none effect or else to remain in full force and virtue; and upon any default in the payment of either the rent past due or hereafter accruing, as above provided, the holder of this obligation shall have the right to declare the same due and payable, and in such event the obligor promises to pay all costs of enforcing the payment hereof, including a reasonable attorney's fees, not less than ten per cent. of the amount due and unpaid."

A statement of the general rule in regard to such a release is as follows: "It is a well-settled rule that a valid agreement between the parties to the principal obligation, without the consent or subsequent ratification of the guarantor for an extension of time for payment or performance by the principal obligor for a definite period, operates to release the guarantor from further liability under the guaranty. * * * But an extension of time as to future payment or perform-

ance, will not release the guarantor from liability which has already accrued." 28 C. J., 999.

But, "Original undertaking. The general rule does not apply where the guaranty, although collateral in form, is in substance an original undertaking by the guarantor." *Id.*, 1001.

As already pointed out, there was evidence from ██ ██ which the trial Judge may have concluded that there was an original undertaking on the part of appellants, and in that event the taking of the chattel mortgage would not operate as a discharge of appellants. This in itself is sufficient ground for overruling this exception. But even if the trial Judge found there was only a collateral undertaking on the part of appellants, it must appear that there was an extension of time for a definite period or that the security was taken in payment or discharge of the original obligation.

"The taking of additional or substituted security such as a bond, bill, or note, by the person in whose favor the guaranty operates does not release the guarantor, for it in no way changes his contract and is not to his injury, * * * unless in connection with the giving of such security there is, without the guarantor's consent, and extension of time for payment or performance, or unless it is accepted in payment and discharge of the original obligation." 28 C. J., 1000, 1006, 1007, citing many authorities from various jurisdictions, including *Providence Mach. Co. v. Browning*, 70 S. C., 148, 49 S. E., 325; *Lawton v. Maner*, 9 Rich. (43 S. C. L.), 335.

We do not construe the above-quoted provision of the ██ mortgage to constitute a definite agreement to extend the time for the payment of these rents. On the other hand, it may be construed to fix the time when, if the rents were not paid, the security could be enforced. The view most favorable to appellants is that the foregoing provision is of doubtful meaning and in such cases extraneous evidence may be resorted to in order to ascertain the intention

of the parties. Respondent, when asked if he had not extended time for payment when he took the security, answered: "I did not. It has never been extended. There has been no extension."

" 'The understanding of the parties at the time of the transaction will, of course, control, but in many cases it is necessary to resort to the legal presumptions that arise. Where the creditor takes new negotiable paper from the debtor, the surety is *prima facie* discharged. This is true whether the question arises in those states where negotiable paper operates as *prima facie* satisfaction or in those states where it operates as conditional payment only. In the one case the debt is *prima facie* paid; in the other there is a *prima facie* extension of time. If, instead of being negotiable, the security taken consists in bonds, mortgages, or other choses in action, the presumption that it was taken in satisfaction or in conditional payment does not arise, and it is *prima facie* treated as collateral only. The fact that such collateral matures in the future is not of itself sufficient to raise the presumption of an extension of time such as to release the surety.'

"In the application of these principles the jury must determine whether there was such a change in the contract as to release the defendant." *Providence Machine Co. v. Browning,* 70 S. C., 148, 156, 49 S. E., 325, 327.

We need not inquire whether there was evidence to support ratification on the part of appellants, nor consider the fact that the rents secured by the mortgage were past due. This exception must be overruled.

Appellants' last exception is: "In that the court should have ruled out any and all parol evidence because plaintiff relied upon written documents in this case and the said parol evidence changed and modified the alleged written contract or agreement, and such evidence should have been held inadmissible, and the court was in error in not so finding and holding."

This exception is entirely too general. However, reference is invited to the following authorities, which hold that where there is any ambiguity in a contract, or where there is doubt as to the proper construction thereof, the construction placed thereon by the parties themselves is entitled to great, if not controlling, influence: *Pennell & Harley v. Hearon,* 169 S. C., 16, 168 S. E., 188; *Williamson v. Building & Loan Ass'n,* 54 S. C., 582, 32 S. E., 765, 71 Am. St. Rep., 822; *Herndon v. Wardlaw,* 100 S. C., 1, 84 S. E., 112.

Also, "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence. *Chicago v. Sheldon,* 9 Wall., 50, 54, 19 L. Ed., 594, 596; *Brooklyn L. Ins. Co. v. Dutcher,* 95 U. S., 269, 273, 24 L. Ed., 410, 411; *District of Columbia v. Gallaher,* 124 U. S., 505, 510, 31 L. Ed., 526, 527, 8 S. Ct., 585." *Old Colony Trust Co. v. Omaha,* 230 U. S., 100, 33 S. Ct., 967, 972, 57 L. Ed., 1401, at page 1417.

We have carefully considered all of appellants' exceptions, and none of them can be sustained.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.