20693

Theo A. and Jacqueline W. CRAPPS, d/b/a White's Super Market, Appellants, v. Aubrey SPIVEY, Respondent.

(244 S. E. (2d) 520)

*Frank A. Graham, Jr.,* Columbia, *for appellants.*

*Seigler, Seigler & Earle,* Columbia, *for respondent.*

May 18, 1978.

LITTLEJOHN, Justice:

The appellants Crapps (Vendors) brought this action to recover the balance due on the sale of grocery stock and equipment to M. V. Norris (Vendee). The respondent (Spivey), a wholesale grocer, was joined as a party defendant because of an alleged promise that he would stand behind Norris' obligation to pay. Spivey, in his answer, denied that he made any statement, promise or guarantee to answer for the Vendee's debt. He further alleged that the Vendors' claim was not in writing and was barred by the Statute of Frauds, § 32-3-10, Code of Laws of South Carolina (1976). At the call of the case for trial, the Vendee consented to a default judgment.

At the conclusion of the Vendors' case, Spivey moved for a nonsuit on the ground that the purported guarantee was within the provisions of the Statute of Frauds, and that no evidence had been offered which would take the agreement out of the statute. The nonsuit was granted, and the Vendors appeal. We reverse.

On a motion for nonsuit, the evidence and all reasonable inferences to be drawn therefrom are to be considered in the light most favorable to the plaintiff-vendors. It is not the province of the court to weigh the testimony, but only to determine if there is any relevant competent evidence reasonably tending to establish the material elements of the plain-

tiff's case. If more than one reasonable inference can be drawn, or if the inferences to be drawn from the evidence are in doubt, a jury issue is created. *Brown v. Reynolds,* 266 S. C. 41, 221 S. E. (2d) 396 (1975).

The Vendors contend that there was evidence from which the jury could have concluded that the promise was not within the Statute of Frauds, and that the lower court erred in granting the motion for nonsuit. They argue (1) that the oral promise was completely executed, *DeWitt v. Kelly,* 256 S. C. 224, 182 S. E. (2d) 65 (1971); and (2) that the main object of Spivey's promise was to serve some purpose of his own, *Price v. Bethea,* 167 S. C. 376, 166 S. E. 409 (1932). Since we conclude that there was evidence from which the jury could reasonably have inferred that the main object of Spivey's promise was to serve some purpose of his own, we need not consider the remaining exception.

The so-called "main purpose" rule appears to have been first recognized in this state in the case of *Lorick & Lowrance v. Caldwell,* 85 S. C. 94, 67 S. E. 143, 145 (1910), and was recently followed in *DeWitt v. Kelly, supra,* J. Bussey, concurring:

"Wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another."

See also, 72 Am. Jur. 2d, *Statute of Frauds,* §§ 192-193; Simpson, *Contracts,* § 72 (2d ed. 1965).

We think that the circumstances leading up to the sale, together with the testimony of Mrs. Jacqueline Crapps, one of the Vendors, create more than one reasonable inference, requiring submission of the issues to the jury.

The Vendors had operated a retail grocery store called White's Super Market. The Vendors' market was a customer of Spivey, who operated a wholesale grocery business.

It was to Spivey's interests to replace the business he was losing as a result of the closing of White's Super Market. It was to his advantage that the Vendee acquire the stock of goods and equipment in order that the White's account be replaced. Spivey introduced the Vendors to the Vendee. He was present during the negotiations of the sale involved, and encouraged the Vendors to sell the merchandise to the Vendee. Spivey's trucks and employees picked up the goods from the Vendors' super market and delivered them to the store of the Vendee. There is evidence that Spivey told the Vendors that he would stand behind the sale and see that they were paid. Mrs. Crapps testified as follows:

"Q. Well, what was Mr. Spivey's interest in bringing Mr. Norris down there to look at this stock of goods and to introduce you to him for the purpose of buying this stock of goods and inventory?

"A. Well, if Mr. Spivey could get the merchandise into the Laurel Street Grocery and the cheap equipment, which it was, it would further help him because he was going to lose the business of White's Market and he would pick it up in Laurel Street Grocery if it could get open and do business."

Spivey was later seen at the Vendee's store attempting to collect an account.

It is inferable from the evidence that the main purpose of Spivey's alleged promise was to secure a customer for his wholesale grocery business, thereby promoting his pecuniary interests. Accordingly, the lower court erred, and the case is

Reversed and remanded for trial.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.